PER CURIAM.
Viola Kathy Bowker sued Johnny Willis, alleging fraud in Willis’s sale to her of a Pasquale Food Company, Inc. (hereinafter “Pasquale”), pizza restaurant franchise that Willis owned in Blountsville. The trial court directed a verdict for Willis at the close of Bowker’s case, on the ground that Bowker had failed to prove any damages. Thereafter, Bowker moved to amend her complaint to conform to the evidence to include a count alleging breach of contract. The trial court denied that motion and Bowker moved for a new trial, which was also denied. She appeals from that judgment.
The record shows that Willis operated five Pasquale franchises during the period from 1980 until 1988. In 1984, Willis closed the restaurant he had been operating in Attalla. About three years later, he decided to use the Attalla franchise agreement to open a restaurant in Blountsville. After receiving Pasquale’s oral permission, he and his partner, Mike Bunt, secured a building in Blountsville, where they opened a Pasquale restaurant in the early part of 1988. A week after the restaurant was opened, Bowker was hired as an employee. Shortly thereafter, she and Willis began discussing a sale of the franchise to her. On February 5, 1988, she wrote Willis a check for $22,000, which represented $10,-000 for the franchise, $9,000 for the restaurant equipment, and $3,000 for the assignment fee that Pasquale charged for such transfers. Willis had paid $10,000 for the Attalla franchise and promised Bowker that he would deliver the $3,000 assignment fee to Pasquale.
Bowker received possession of the building and the equipment and immediately assumed control of the restaurant. On *1334 March 1, 1988, Pasquale amended Willis’s Attalla franchise agreement to cover the Blountsville restaurant, but the franchise remained in Willis’s name and remained unchanged in all other respects. After a year of operation, Bowker closed the restaurant.
The franchise agreement between Willis and Pasquale for the Attalla restaurant required Willis to give Pasquale at least 30 days’ notice in writing of any offer to purchase the franchise. The agreement also gave Pasquale the right of first refusal to purchase the franchise and prohibited Willis from selling, assigning, or transferring the franchise without first obtaining the written consent of Pasquale.
The evidence is undisputed that Willis never gave Pasquale written notice of Bowker’s intent to purchase and that Pasquale never consented, in writing, to Willis’s sale of the franchise to Bowker. Thus, Pasquale never approved the sale and the franchise agreement was never amended to show Bowker as the owner.
We find no evidence in the record that Willis ever misrepresented to Bowker that he had notified Pasquale in writing of her desire to purchase his franchise or that Pasquale had approved the sale. Even if Willis had misrepresented material facts to Bowker, we agree with the trial court that Bowker did not prove that she was damaged as a proximate result. She testified as follows regarding her reasons for closing the restaurant:
“Q. Was the reason you shut this business down because it just wasn’t doing well?
[[Image here]]
“A. No, it wasn’t doing well at all.
“Q. It wasn’t doing well. Wasn’t making enough money to pay you, pay employees, pay the cost to keep the doors open; is that correct?
“A. It hadn’t been.
“Q. Now, was there anything — did Johnny [Willis] cause you to shut down this business?
“A. No.
“Q. Did Mike Bunt cause you to shut down this business?
“A. No.
“Q. Did Pasquale cause you to shut down this business?
“A. No.
“Q. You decided to shut it down yourself; is that it?
“A. Yeah.
“Q. Because it wasn’t making enough money?
“A. Yes.
[[Image here]]
“Q. Okay. Did the fact that you did not get that transfer into your name cause the failure of this business?
[[Image here]]
“A. It bothered me not having nothing in my name, but it didn’t cause it to close, no.
“Q. It did not cause you to close?
“A. No.”
Willis did not interfere in any way with Bowker’s operation of the Blountsville restaurant. Rather, Bowker testified that Willis assisted her in various ways with the operation of the restaurant until about April 1988. Moreover, Pasquale did not force Bowker to close the restaurant because the franchise was not in her name.
The requisite elements of a fraud claim are (1) a misrepresentation (2) of a material existing fact, (3) relied upon by the plaintiff, (4) who was damaged as a proximate result of the alleged misrepresentation. Hilley v. Allstate Ins. Co., 562 So.2d 184 (Ala.1990). There is no evidence in the record that Bowker was damaged as a proximate result of Willis’s failure to notify Pasquale that he had a buyer for the Blountsville franchise.
We do find, however, that Bowker presented sufficient evidence at trial to support a breach of contract claim. The evidence is undisputed that Willis and Bowker had an oral contract for the sale of the franchise, pursuant to which Bowker paid Willis $10,000 for the right to own the franchise and $3,000 for the assignment fee that Pasquale charged, that Willis never notified Pasquale in writing of Bowker’s *1335 desire to purchase the franchise, and that Willis never sent the $3,000 to Pasquale. The record shows that Willis breached his contract with Bowker by failing to perform as he had promised.
“ ‘Breach’ consists of the failure without legal excuse to perform any promise forming the whole or part of the contract. 17 Am.Jur.2d Contracts § 441 at 897. Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do. 17 Am.Jur.2d, supra.”
Seybold v. Magnolia Land Co., 376 So.2d 1083, 1085 (Ala.1979). See, also, Gray v. Reynolds, 553 So.2d 79 (Ala.1989) (if no time for performance is stated, the law requires that an act be done within a reasonable time).
The trial judge granted Willis’s motion for directed verdict outside the presence of the jury during the noon recess. He also denied Bowker’s motion to amend the pleadings to conform to the evidence, pursuant to Rule 15(b), Ala.R.Civ.P., and entered the following order:
“3/8/90 This case came on for trial on March 5, 1990. The jury being selected and duly impaneled and the case was set for trial on this the 8th day of March 1990. The Plaintiff offered evidence in support of Complaint. At the conclusion of Plaintiff’s case, the Defendant made a Motion for Directed Verdict. After arguments of counsel and consideration of authorities cited by counsel, this Court is of the opinion that Motion for Directed Verdict is due to be granted.
“Therefore, be it ORDERED, ADJUDGED and DECREED that judgment be and same is hereby entered in behalf of the Defendant. These proceedings were held by the Court outside the presence of the jury, after the jury had been released for lunch. The Court requested the Attorneys for Plaintiff and one of the Attorneys for Defendant to be present at 1:00, the appointed time for the jury to return. At 1:00, the Attorney for Plaintiff and Plaintiff being present. The Attorneys for Defendant being present but the Attorneys reported to the Court that they had released the Defendant and all of the Defendant’s Witnesses. The Plaintiff filed with the Court an Amendment amending the Complaint to said cause of action on contract rather than fraud, being the only issue in the original Complaint. The Attorneys for Defendant strenuously objected to allowing the amendment. If said amendment should be allowed, it would work a continuance of said case and due to the fact that all of the evidence that has been presented by the Plaintiff was in support of the Complaint alleging fraud. This Court is of the opinion that the Defendant would be unduly prejudiced to allow the Plaintiff to proceed on the amendment.
“Therefore, be it ORDERED, ADJUDGED and DECREED that this Court disallows the amendment to the Complaint.”
The record reveals that Willis’s attorney never objected to the evidence regarding Willis’s failure to notify Pasquale; rather, the record shows that Willis’s attorney impliedly consented to trial of the breach of contract issue. Rule 15(b) states that “[wjhen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.” (Emphasis added.) This provision has been interpreted as follows:
“Rule 15(b) is not permissive: it provides that issues tried by express or implied consent shall be treated as if raised in the pleadings. 3A Moore’s Federal Practice 996.
“If one party raises an issue material to the other party’s case, or if evidence is introduced without objection, implied consent is ordinarily found. 3A Moore’s Federal Practice 994; Stacy v. Aetna Casualty & Surety Co., 484 F.2d 289 (5th Cir.1973).
“If a party objects to the introduction of evidence at the trial on the ground that it is not within the issues framed by *1336 the pleadings, he must show that he would be actually prejudiced in maintaining his action or defense on the merits by the admission of the evidence. 3A Moore’s Federal Practice 1011.”
Hawk v. Bavarian Motor Works, 342 So.2d 355, 358 (Ala.1977) (emphasis original). See, also, Scott v. Heard, 497 So.2d 494 (Ala.1986), and Bischoff v. Thomasson, 400 So.2d 359 (Ala.1981).
In its order denying the amendment, the trial court stated that an amendment would require a continuance of the case; however, in this Court’s opinion, Willis made no showing in the record that he would be prejudiced in maintaining his defense upon the merits.
We find that the trial court abused its discretion when it disallowed Bowker’s amendment. We do, however, hold that the trial court correctly directed a verdict for Willis on the fraud count. For the above reasons, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., and SHORES and INGRAM, JJ., concur in part and dissent in part.