On Application for Rehearing
The opinion of October 29, 1993, is withdrawn and the following opinion is substituted therefor.
This appeal arises out of Inter-American Insurance Company's refusal to pay death benefits under certain life insurance policies. After the death of the insured, the beneficiaries, who had been co-owners of stock with the insured, filed fraud and negligence claims against Inter-American and the agent for the insured. The trial court stayed the action against Inter-American because of bankruptcy and thereafter entered a summary judgment *Page 875 
in favor of the agent. The beneficiaries appeal from the summary judgment.
The dispositive issue on appeal is whether the evidence before the trial court on the summary judgment motion created a genuine issue of material fact as to whether the agent for the insured knew or should have known that the insured had been treated for cancer within three years of his application and was therefore ineligible for insurance because of the insured's false statement on the applications.
A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank,540 So.2d 732, 734 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant. Southern Guar. Ins.Co., supra, at 734.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
The insured, Mickey Kennedy, had been treated for cancer in 1981 and had subsequently incurred great difficulty in obtaining life insurance. In 1984 the shareholders of Crowne Investments, Inc. ("Crowne"), and Monroeville Nursing Home, Inc. ("Monroeville"), entered into a buy-sell agreement regarding Monroeville stock. Kennedy was a shareholder in both Crowne and Monroeville. Billy Jones, who served as president of Monroeville and as vice president of Crowne, wanted to fund the agreement with insurance. He spoke with George Bryant, an insurance agent, concerning the purchase of additional life insurance for Kennedy. Bryant had assisted Crowne and Monroeville in previous buy-sell agreements funded by life insurance. At Jones and Kennedy's request, Bryant made numerous attempts at acquiring life insurance for Kennedy during 1984 and 1985. Bryant included copies of Kennedy's medical records with the applications for coverage. The medical records included a letter from a Texas surgeon pronouncing Kennedy free from all recurrent or residual cancer. However, Bryant could not obtain insurance for Kennedy, because of Kennedy's 1981 cancer surgery.
While still attempting to obtain insurance for Kennedy in 1987, Bryant learned about Inter-American Insurance Company. Inter-American was licensed in Alabama and was rated as a "good" company according to industry standards. Inter-American's brochure stated that the company would supply life insurance coverage to Kennedy without requiring that Kennedy submit to a physical examination. Inter-American's brochure offered life insurance "regardless of health history," which was "guaranteed issue if [the applicant was] actively at work." However, although a physical examination was not required, Inter-American did require the applicant to answer two questions. The first question was whether the applicant was actively at work. According to the brochure, in order to receive coverage the applicant was required to answer "yes" to this question. The second question was as follows:
 "Have you had or been treated for: heart attack; cancer; stroke; chronic disease of the liver or kidneys; organic brain disease; or acquired immune deficiency syndrome within the past three (3) years?"
The applicant's answer to this question determined the type of coverage that Inter-American was to issue. The brochure stated that if the applicant answered "no," then he would qualify for a "Pre-Approved Life I" ("PAL I") policy, with an immediate death benefit equal to the initial face amount of the policy. If the applicant answered "yes," he would qualify for a "PAL II" policy, providing in the first three policy years a death *Page 876 
benefit less than the full amount applied for; in the second and third years the policy would increase, and in the fourth year after issuance it would equal the face amount of the policy. "PAL II" was not available in Alabama.
When Bryant informed Kennedy about Inter-American, Kennedy applied for two policies, one naming Crowne as beneficiary and the other naming Monroeville. Bryant stated that he asked Kennedy whether he had experienced the listed ailments in the preceding three years. Specifically, Bryant testified as to Kennedy's reply:
 "He said no, he hadn't. . . . [H]e turned to Myrtle Fore [Kennedy's personal secretary] and said, 'Myrtle, I haven't been treated for any of this,' and she said, 'Well, I don't think so, Mickey'. . . ."
Bryant stated that he then told Kennedy that "if they haven't occurred, then sign the application."
Jones testified that after learning about Inter-American, Bryant told him:
 "Well, I think we found an answer to our problem in insuring Mickey. We have a policy that we don't have to have a physical and Mickey just has to answer the questions on the application and it's guaranteed insurable. It's guaranteed issue. No problems."
This statement is the sole alleged misrepresentation upon which Crowne and Monroeville rely in their fraud claim.
Kennedy checked the answer "no" on the application for the Crowne policy and instructed Bryant to do the same on the application for the Monroeville policy. Kennedy signed both policies, certifying that the information was "true and complete to the best of [his] knowledge." Both policies expressly stated that Inter-American could contest their validity for any material misrepresentation of fact.
Inter-American subsequently issued the policies, but it refused to pay the policy benefits upon Kennedy's death. In its letter explaining its refusal, Inter-American stated:
 "A review of the records from Dr. Grayson Simmons and the Monroeville Medical Clinic indicates that in December of 1985, June of 1986, and February of 1987, Mr. Kennedy had cancerous growths removed from his neck. According to our file Mr. Kennedy answered 'no' to question two (2) on both applications which ask: 'have you had or been treated for: . . . Cancer . . . within the past three (3) years?'
 "Had we been provided with the correct answer to question two on the applications, policy numbers 529628U and 529629U would not have been issued."
After Inter-American's refusal to pay, Bryant attempted to persuade the company to pay the policy benefits. In a letter to Inter-American, Bryant stated:
 "I had worked closely with [Kennedy] helping him with his insurance and estate matters and was aware that in May of 1981 he did have cancer of the throat and I was also aware that he was a constant drinker and had liver problems. When I took his application in 1987 I asked the very question that was on the application [concerning the cancer] . . . within the past three years — his answer was NO. . . . Keeping in mind that Mr. Kennedy lived in Monroeville, AL and I live in Mobile a good hour and a half drive away. I had no possible way of knowing what his day-to-day activities were as far as doctors were concerned. The fact of the matter is, his secretary would not divulge where he was at any time, so I had no idea when he was treated at any point in time."
After Inter-American would not reconsider its refusal to pay on the policies because of the cancer treatments, Crowne and Monroeville filed this fraud and negligence action.
"Fraud" is defined by Ala. Code 1975, § 6-5-101:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
"Fraud," within § 6-5-101, includes four elements: (1) There must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon the false representation; and *Page 877 
(4) the plaintiff must be damaged as a proximate result.Harmon v. Motors Ins. Corp., 493 So.2d 1370, 1373 (Ala. 1986). Crowne and Monroeville argue that Bryant's statement to Jones about the Inter-American policy was a false representation and that he knew or should have known of Kennedy's health problems when Kennedy answered the question on the policies.
Crowne and Monroeville failed to provide sufficient evidence that Bryant's statement to Jones that the insurance was "guaranteed issue" was a false representation within the purview of § 6-5-101. Bryant correctly stated that the policy did not require a physical; that Kennedy had to answer the questions to obtain insurance; and that there would then be guaranteed issue. Had Kennedy not been treated for cancer during the preceding three years, Inter-American would have guaranteed issuance of the PAL I policy, and it would have paid the death benefits in accordance with the policy. Although Bryant admitted to having some knowledge of Kennedy's alcoholism, Crowne and Monroeville presented no evidence that Bryant knew or should have known about Kennedy's cancer treatments in the three years preceding the insurance application. The evidence shows that no one besides Kennedy and his physicians knew of his cancer treatments. In fact, there is no evidence that even Kennedy's personal secretary, Myrtle Fore, who Jones testified was Kennedy's "confidante," knew of the cancer treatments. Further, Jones himself testified that he knew only of Kennedy's 1981 cancer treatment, although he had worked with Kennedy approximately 20 hours a week and had been Kennedy's first cousin and next-door neighbor. The record reveals that Bryant lived in Mobile, a substantial distance from Monroeville, and made trips to Monroeville only sporadically. Bryant testified that, although he had assisted Kennedy with estate planning, Kennedy had never told him about the ongoing cancer treatments, and Crowne and Monroeville provided no evidence to refute Bryant's testimony.
Further, Bryant's representation was simply a statement of opinion to Jones that, after years of working with Kennedy, he "thought" he had finally been able to obtain life insurance coverage for Kennedy. Ordinarily, the expression of an opinion is not treated as a statement of an "existing fact" under the fraud statute. Lawson v. Cagle, 504 So.2d 226 (Ala. 1987);Hutchins v. State Farm Mutual Automobile Ins. Co.,436 So.2d 819 (Ala. 1983). Without proof that Bryant had an intent to deceive at the time the representation was made, his statement of opinion will not serve as a basis for a fraud action.Voyager Guaranty Ins. Co. v. Brown, 631 So.2d 848 (Ala. 1993);Reynolds v. Mitchell, 529 So.2d 227 (Ala. 1988). Crowne and Monroeville did not offer such proof.
In addition, it is clear that Bryant's statements, at most, were the expression of a belief that the company with which Kennedy applied, Inter-American, would issue Kennedy insurance in the future. A fraud action based upon a promise of future performance must be based on evidence that the defendant intended to deceive the plaintiff. Kennedy Elec. Co. v.Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983); D.H. HolmesDep't Store v. Feil, 472 So.2d 1001 (Ala. 1985). A mere statement of opinion or prediction as to events to occur in the future is not a statement of a "material fact" upon which individuals have the right to rely and, therefore, it will not support a fraud claim. Fincher v. Robinson Bros.Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991); Lawson, supra ("Ordinarily, a prediction as to events to occur in the future is to be regarded as a statement of opinion only, on which the adverse party has no right to rely."). Again, the plaintiffs offered no evidence that Bryant intended to deceive Crowne and Monroeville as to Inter-American's future performance. Bryant was merely stating his belief that Inter-American, a third party, would issue Kennedy insurance. It is clear that, as far as Bryant knew about Kennedy's health at the time the questions were answered, Inter-American would have done so in response to Kennedy's answers.
Additionally, as noted above, Crowne and Monroeville must provide sufficient evidence of proximate causation to support their fraud claim. Proximate cause is *Page 878 
an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces the injury and without which the injury would not have occurred.Thetford v. City of Clanton, 605 So.2d 835, 840 (Ala. 1992).
Clearly, it was Kennedy's misrepresentations about his cancer treatments, not any representation made by Bryant, that prompted Inter-American's refusal to pay the death benefits and thereby caused Crowne and Monroeville's loss. Kennedy's deception was the sole proximate cause of the loss sustained by Crowne and Monroeville; the trial court properly made that determination as a matter of law. See Bowker v. Willis,580 So.2d 1333 (Ala. 1991) (where in a fraud claim there was no evidence to show proximate causation of loss or damage the trial court properly directed a verdict for the defendant on the fraud claim).
We conclude that the trial court properly entered the summary judgment in favor of Bryant on Crowne and Monroeville's fraud claim.
We likewise find no merit in Crowne and Monroeville's claim that Bryant negligently failed to obtain insurance on Kennedy to fund the buy-sell agreement. To prove negligence, Crowne and Monroeville must establish all four elements of the action: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v.Hsu, 602 So.2d 895, 897 (Ala. 1992). Further, we note:
 "If the . . . agent acts in good faith and with reasonable care, skill and diligence to effect the insurance in compliance with his principal's instructions, he is not liable for damages which are not due to any fault on his part."
44 C.J.S. Insurance § 215, p. 409 (1993).
We have already determined that Bryant made a prima facie showing that he had no knowledge of Kennedy's cancer treatments during the time in question, and that showing was unrebutted. In addition, it was clearly Kennedy's misrepresentation about his cancer treatments, not any negligence on Bryant's part, that proximately caused Crowne and Monroeville's loss or damage. There was no showing that Bryant failed to act in good faith and with reasonable care in assisting Kennedy in his attempts to procure insurance. Moreover, although Crowne and Monroeville make much of the fact that Bryant was unaware that the PAL II policy was unavailable in Alabama, it is clear that we need not address that issue. There was no actionable negligence in Bryant's failure to know about the PAL II policy, because, again, the sole proximate cause of loss or damage was Kennedy's false representations about his health on the applications. The PAL I policy would have paid death benefits to Kennedy's beneficiaries had Kennedy not been treated for cancer during the three-year period and had he answered truthfully as to that question. When Bryant learned of Inter-American, which would "guarantee" coverage for applicants who answered "yes" as to whether they were working and who answered "no" to the question concerning health, and when he then assisted Kennedy in submitting his applications, Bryant had simply done all that he could do. Bryant, as an insurance agent without knowledge of Kennedy's misrepresentation or knowledge of his cancer treatments, should not be held accountable for Kennedy's misrepresentation. Crowne and Monroeville presented no evidence that Bryant should have been aware of the cancer treatments, and, absent any facts that would put him on notice of the treatments, Bryant had no obligation to independently investigate Kennedy's statements. Bryant had the right to expect Kennedy to tell him the truth. See Old Southern Life Ins. Co. v. Spann, 472 So.2d 987 (Ala. 1985).
Mere conclusory allegations or speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer facts to defeat the motion.Riggs v. Bell, 564 So.2d 882, 884 (Ala. 1990). For the foregoing reasons, we agree with the trial court that there exists no genuine issue of material fact regarding Crowne and Monroeville's fraud and negligence claims against Bryant. Therefore, the judgment is affirmed. *Page 879 
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED; APPLICATION OVERRULED.
HORNSBY, C.J., and SHORES, STEAGALL and COOK, JJ., concur.