MONROE, Judge.
Jenny Burleson Openshaw sued Health-South Rehabilitation Corporation seeking a judgment declaring that she was entitled to purchase certain shares of HealthSouth common stock pursuant to a stock option agreement. After a hearing, the trial court entered a summary judgment in favor of HealthSouth, holding that Openshaw was not entitled to purchase the stock. The trial court also ordered reformation of the option agreement to correct what it called a “scrivener’s error.” Openshaw appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
A summary judgment may be entered only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Crowne Investments, Inc. v. Bryant, 638 So.2d 873 (Ala.1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party’s favor. Id.
Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala. Code 1975. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). To defeat a defendant’s properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The record shows the following. Open-shaw worked as an executive with Health-South from August 1992 until August 1995. At different times throughout her employment, she was granted options to purchase certain numbers of shares of common stock in HealthSouth at specified times. The October 26, 1992, “Incentive Stock Option Agreement” is the contract at issue. Under that agreement, Openshaw had an option to purchase 5,000 shares of stock. HealthSouth declared a stock split, which increased her option grant to 10,000 shares.
Section 2 of the option agreement reads as follows:
“2. PERIOD OF OPTION. Except as otherwise provided in the Plan, the option is cumulatively exercisable in installments in accordance with the following schedule:
“Percent of Shares Subject to Option ‘Tear Beginning Purchase
1992 None
1993 25%
1994 50%
1995 75%
1996 100%
“The Option may be exercised from time to time during the option period as to the total number of shares allowable under this Section 2, or any lesser amount thereof. The option is not exercisable before October 26, 1993, or after October 25, 2002.”
Openshaw later entered into another agreement that was identical, except that in it the grant date was February 26, 1993, and the dates were changed accordingly. She later entered into a third option agreement, *914 this one with a grant date of March 10,1995. Again, the dates were changed accordingly. Additionally, on the March 10, 1995, agreement, March 10 had been added to the column heading “Year beginning” so that the heading read, ‘Tear beginning March 10.” Openshaw could not exercise that option before March 10, 1996, or after March 9, 2005.
Openshaw’s employment with HealthSouth was terminated on August 9, 1995. She was given the opportunity to sign an agreement allowing her to stay on the company’s payroll for 90 days, which means she still would have been on the payroll on October 26, 1995, but she declined to sign that agreement. On October 12, 1995, two months after her employment had ended, Openshaw tried to exercise her option to purchase HealthSouth stock pursuant to the October 26, 1992, agreement. Anthony J. Tanner, executive vice president of administration for Health-South, wrote a letter to Openshaw’s attorney explaining that because the shares Openshaw was trying to buy had not yet vested, she would not be allowed to exercise the option.
Openshaw contends that the terms of the October 26, 1992, option agreement are clear and unambiguous, and that, according to Section 2 of the agreement, Openshaw’s shares for 1995 vested on January 1, 1995. Therefore, she says, the trial court erred in not enforcing the agreement as it was written and in holding that she was not entitled to exercise the October 26, 1992, option agreement.
In entering the summary judgment in favor of HealthSouth, the trial court based its judgment in part on a provision in the company’s 1992 option. The provision relied upon by the trial court states, in pertinent part, that “[t]he interpretation and construction of any provision of the plan or of any option granted under it by the Board of Directors, the Committee or the Independent Committee ... shall be final, conclusive and binding upon all parties, including the Corporation ... and the employees of the Corporation.”
The trial court explained its holding as follows:
“Under this provision, HealthSouth is the final arbiter of what this document means as between itself and its employees. HealthSouth has presented clear and un-controverted evidence that the Board of Directors of HealthSouth has consistently interpreted each and every Stock Option Agreement since 1984 to mean that options vest on the anniversary date of the grant.”
We note that in her argument as to this issue, Openshaw makes no mention of the provision relied upon by the trial court. Terms of a contract are to be construed in pari materia and a construction adopted that gives effect to all terms used. Sullivan, Long & Hagerty v. Southern Electric Generating Co., 667 So.2d 722 (Ala.1995). Open-shaw signed the option contract; therefore, she is bound by its terms. See, Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303 (Ala.1997); Power Equipment Co. v. First Alabama Bank, 585 So.2d 1291 (Ala.1991). Furthermore, there is no evidence that she did not understand the agreement at the time she signed it. Openshaw cannot disregard provisions of the contract simply because she later decides she disagrees with them or because they do not help her cause.
The undisputed evidence shows that since HealthSouth first adopted its employee stock option plan, the board has directed that the vesting schedule is to be governed by the anniversary date of the grant. Openshaw presented no evidence to the contrary.
We agree with the trial court that because the board of directors had the final and binding interpretation of what was meant by any of the provisions of the option, its decision that stocks vested on the anniversary date of the grant is final and binding. Further, Openshaw presented no evidence that her rights under the stock option agreement were different from the rights extended to any other employee since the inception of HealthSouth’s employee stock option plan.
The option contract Openshaw signed gives the board of directors the final say over the meaning of provisions within that contract. Openshaw may disagree with the board’s interpretation, but she cannot ignore its authority. As the trial court stated, *915 “HealthSouth is the final arbiter of what this document means as between itself and its employees.” Openshaw presented no evidence that HealthSouth had ever interpreted the option agreement’s vesting schedule any differently than it had in her ease. Therefore, trial court correctly entered the summary judgment in favor of HealthSouth.
“In reviewing the judgment of a trial court, this Court will ... affirm the trial court’s judgment if it is supported by any valid legal ground.” McKenzie Methane Corp. v. M-W Drilling, Inc., 653 So.2d 982, 984 (Ala.1995). Because the summary judgment was properly entered on the basis we have discussed, we need not address the other issues raised by Openshaw concerning whether the trial court erred reforming the option contract.
The judgment of the trial court is affirmed.
AFFIRMED.
YATES and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in the result.
ROBERTSON, P.J., concurs in the result only.