John Forrester sued the operator of Birmingham television station WVTM TV, Inc., alleging that it had libeled him by broadcasting a videotape that he said labeled him as a child abuser. The trial court entered a summary judgment in favor of the television station. Forrester appealed to the Alabama Supreme Court, which deflected the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Crowne Investments, Inc. v. Bryant, 638 So.2d 873
(Ala. 1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party's favor.Id.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975. See Bass v. SouthTrust Bankof Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). To defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
The following facts are undisputed. In June 1995, Joe Rogers, a part-time photographer for WVTM, Channel 13, was at a Hueytown Dixie Youth League championship baseball game to watch his nephew play. Rogers was not on duty at the time; however, he did have his camera in the trunk of his car.
The baseball players in the championship game were five- and six-year-olds. Rogers's nephew played for the Braves. During the game, Rogers said, he noticed a man "ragging" on a child who played for the Cubs. He said the man was yelling and fussing at the boy. After witnessing the man's behavior, Rogers said, he got his camera, set it up behind the outfield, and started taping. Several other people also were taping the ball game.
After Rogers began taping, the child who had been scolded was tagged out between bases. When the boy left the field, Rogers continued to tape as the man, later identified as John Forrester, grabbed him, shook him, and slapped him twice in the face. Rogers was appalled at the man's behavior and "thought the public needed to know about it." He showed the tape to his supervisor the next day, and his supervisor asked him to bring the tape to the station's morning meeting for review. WVTM then decided to do a story on the pressure adults put on children in sports, using the tape as part of the story. Rogers and two reporters working on the story, Mary Beth Cusack and Jason Feinberg, made several attempts to identify and contact the man. Finally, one of the Cubs coaches identified the man as Forrester. The child he slapped was his son. Feinberg made repeated calls to Forrester's home, but the calls were never returned.
The various people contacted by reporters told Forrester that they were looking for him, but he made no attempt to talk with reporters. He also saw a promo for the story, which contained the video of him slapping his son, but still he did not contact the television station. Forrester, who was not the team's coach, testified that he met with the Hueytown Dixie Youth League Board the Sunday before WVTM broadcast the story. He said board members, none of whom had seen the promo for the WVTM story, asked him to explain what had happened between him and the boy at the ballpark. Forrester *Page 25 
said he told them that his son "was basically throwing a temper tantrum and that — you know, I popped him trying to stop his temper tantrum." The board initially suspended Forrester for an indefinite time, but later, Forrester said he had been suspended for the first two games of the 1996 season, meaning he could not attend the games.
On Tuesday, June 13, WVTM broadcast a feature story titled, "It's How You Play the Game," during its 6 p.m. and 10 p.m. reports. The story was rebroadcast during the midday reports on June 14 and 15. For the next two weeks, viewer comments on the story were aired during a weekly segment called, "It's Your Call."
The raw tape shows the child being tagged out, and as he runs to the dugout he is obviously upset. He takes off his batting helmet and looks as if he is about to cry. Forrester grabs him and slaps him in the face; they take a few steps, with Forrester still holding onto the boy, and then Forrester slaps him again and gestures toward the playing field. The boy looks scared throughout the episode.
In the WVTM broadcast, the boy and the man are "clouded" over so that their identities remain hidden, and the actual slaps are hard to distinguish. The news anchors and reporters tell viewers that the man slapped the child twice. Forrester and his son are never identified by name in the broadcast. The station uses the episode to launch a broader discussion about the pressures adults put on children in sports.
Forrester claims that material issues of genuine fact exist so as to preclude a summary judgment. He contends that "[t]he broadcast as a whole charged John Forrester with child abuse, a felony," and that "false imputation of the commission of a felony is defamatory per se." That contention is not supported by the evidence. A close review of the broadcast reveals that it never charges Forrester with anything. The broadcast as a whole is not about Forrester, despite his contention to the contrary. In fact, the broadcast shows other parents at the same ball game getting into a fight in the parking lot after the game, and the story discusses those actions at length. This case does not involve false imputation of a felony.
To prevail in a defamation action, the plaintiff must show:
 "1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."
McCaig v. Talladega Publishing Co., 544 So.2d 875, 877 (Ala. 1989) (emphasis in the original).
In other words, to establish a prima facie case of defamation, Forrester has to show that WVTM was at least negligent in publishing a false and defamatory statement concerning Forrester. Nelson v. Lapeyrouse Grain Corp.,534 So.2d 1085 (Ala. 1988). We reiterate that the images of Forrester and his son were "clouded" on the WVTM broadcast, and the two are never identified by name. We fail to see how the television station could defame a "blue dot."
Regardless, in deciding whether a person has been defamed, the trial court must first determine whether the plaintiff is a public figure or a private individual. Ex parte Rudder,507 So.2d 411, 416 (Ala. 1987). There is no dispute that Forrester is a private individual. If a private individual is alleging defamation, then the trial court must determine whether the alleged defamatory speech involves a matter of public concern.Id., citing Philadelphia Newspapers, Inc. v. Hepps,475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).
 "The recent United States Supreme Court opinion in Hepps holds that a private figure plaintiff who seeks to recover damages against a media defendant for defamatory speech on a matter of public concern must also show that the statements at issue are false. The Court held that 'the common law's rule on falsity — that the defendant must bear the burden of proving truth — must similarly fall here to a constitutional requirement that the plaintiff bear the *Page 26 
burden of showing falsity, as well as fault, before recovering damages.' 475 U.S. at [776], 106 S.Ct. at 1563."
Ex parte Rudder, 507 So.2d 411, 415-16 (Ala. 1987). WVTM did a story about adults putting pressure on children in sports; Forrester slapping his son at a ball game was part of the larger story. In his brief to this court, Forrester contends that "[n]o matter of public concern existed," and he argues that "[a] parent disciplining his child is not of public concern." We disagree. Clearly, the community has an interest in the welfare of its children, especially at community-sponsored events. And the purpose of the story, whether adults are putting too much pressure on children in sports, emphasizing to five- and six-year-olds the importance of winning over the importance of enjoying the game and developing good sportsmanship, is without a doubt a matter of public concern.
Because this case involves a matter of public concern, the burden is on Forrester to show that the broadcast was false.Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767,106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). The video aired by WVTM truthfully depicts what occurred at the ball field. The video and the reporters' corresponding explanations as to what occurred are true in their most literal sense. The station never accused Forrester of child abuse. Forrester failed to present any evidence that the broadcast was false. While he may disagree with the station's decision to air his obnoxious behavior at the ball field, the episode served as an example of a matter of public concern and was therefore a legitimate news story. WVTM is not to blame for Forrester's embarrassment over his own actions.
"Truth is always an absolute defense to any action for libel or slander." McCaig v. Talladega Publishing Co., 544 So.2d 875,879 (Ala. 1989). Because the broadcast was true, as a matter of law it was not capable of having a defamatory meaning. See id.
Forrester is a private individual, but his behavior — slapping his six-year-old son at a little league baseball game in full view of the public — brought up a matter of public concern, i.e., whether adults put too much pressure on children in sports. Therefore, Forrester bore the burden of showing that the broadcast was false. He failed to present substantial evidence that the broadcast or any statements made during the broadcast were false; therefore, the trial court properly entered the summary judgment in favor of WVTM.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.