Shelby J. Woodley, individually and on behalf of her minor daughter, Amber, filed an action against the City of Jemison, the Jemison City Council, Pat Northcutt, Kenneth Ray, and Jeff Townsend, alleging counts of trespass, false imprisonment, the tort of outrage, and negligent and intentional infliction of emotional distress, and making claims under 42 U.S.C. § 1983 and1985. Woodley alleged that she had received obscene telephone calls from Northcutt, a Jemison police officer. Woodley later amended her complaint to add her husband, Mark, as a plaintiff; he sought damages for loss of consortium.
The trial court entered a summary judgment in favor of each of the defendants on all counts. The Woodleys appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
A summary judgment may be entered only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Crowne Investments, Inc. v. Bryant, 638 So.2d 873 (Ala. 1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party's favor. Id.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). To defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
The facts, viewed in a light most favorable to the Woodleys, are as follows: In March 1996, Shelby Woodley began receiving obscene telephone calls at her home. Woodley received the telephone calls on several Saturday mornings, shortly after her husband had left the house to go fishing. She also received two obscene telephone calls on two Friday mornings after her husband had left home to go fishing. In April 1996, she received a bomb threat over the telephone, and in another call the caller threatened to harm the Woodleys' son.
Mark Woodley testified that he began to suspect Northcutt was responsible for the obscene telephone calls. Mark testified that when he left his home in the early mornings to go fishing, the only person he passed was Northcutt, who was either at the police station or on patrol. Mark also *Page 1095 
testified that his wife received obscene telephone calls only on mornings when he passed Northcutt. However, he said, he was not sure whether he had passed Northcutt on two of the mornings his wife received the calls. Mark said that he did not tell his wife of his suspicions regarding Northcutt.
Shelby Woodley had the family's telephone number changed, and the new number was unlisted. The Woodleys said that they had not given the new number to anyone, including family members, before the obscene calls resumed. A few days after the Woodleys had their telephone number changed, Shelby found Northcutt on her property, helping the Woodleys' neighbor catch an escaped horse. Because she had noticed that on several occasions Northcutt had been parked in the area near her house, she told him she had been receiving obscene telephone calls and asked him whether he had noticed anything unusual around her house. Shelby said that Northcutt insisted that she file a police report about the calls.
Northcutt returned to the Woodleys' home several days later to complete an incident report about the obscene calls. Shelby said she gave Northcutt the new, unlisted telephone number. She said that at that time he was the only person to whom the number had been given. Northcutt said that he did make an incident report regarding the telephone calls, but, he said, Woodley did not give him the new telephone number. Also, there is no record of the incident report in the Jemison police records. City officials testified that they knew of no other report that had been lost for at least the past 14 years.
The Saturday after Northcutt completed the report at the Woodleys' home, Shelby received another obscene telephone call, shortly after her husband had left the house to go fishing. At that time, the Woodleys concluded that Northcutt was making the calls. Subsequently, the Woodleys had a tap placed on their telephone line, on two occasions. No obscene calls were received while the taps were in place.
Sometime in 1996, Northcutt came to the Woodleys' home saying he was checking on the Woodleys' neighbors' house because its alarm was going off. Amber Woodley answered the door and was frightened when she realized Northcutt was there. Shelby said that she talked with Northcutt on that occasion, but that she had not heard the neighbors' alarm.
Shelby testified that, beginning in early 1997, Northcutt followed her on several occasions. Shelby also testified that on April 26, 1997, Northcutt pulled her over in her car and accused her of speeding. Northcutt gave her a verbal warning but did not give her a ticket.
On May 19, 1997, Mark went to the Jemison City Hall to complain to Mayor Kenneth Ray and Police Chief Jeff Townsend about Northcutt's conduct. On June 12, 1997, the Woodleys filed a notice of claim with the Jemison city clerk. On July 10, 1997, the Woodleys filed their complaint.
In its judgment, the trial court held that the Woodleys' claims against the city were barred by the nonclaim statute, §11-47-23, Ala. Code 1975. The trial court also held that the Woodleys had failed to present substantial evidence on the claims not barred by the nonclaim statute — false arrest and false imprisonment. The trial court also found that the Woodleys did not present substantial evidence of ill will on the part of Northcutt that would defeat Northcutt's discretionary immunity or qualified immunity. The Woodleys do not appeal from the summary judgment as it relates to the Jemison City Council, Mayor Ray, or Chief Townsend. They do appeal from the summary judgment as it relates to the city and Northcutt.
The Woodleys first argue that the trial court erred in entering the summary judgment on their claim alleging the tort of outrage. For conduct to give rise to liability for the tort of outrage, it must *Page 1096 
meet a certain threshold. The Alabama Supreme Court set out what constitutes outrageous conduct, in American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980):
 "[W]illful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement [(Second) of Torts, § 46 (1965)], at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra at 72."
The Woodleys presented substantial evidence from which a jury could reasonably determine that Northcutt was making the obscene telephone calls to Shelby Woodley. Because Northcutt is a police officer, the public places its trust in him to an extent far greater and far more easily than it does in almost any other individuals in any other profession. In that position of trust, Northcutt has access to information not readily available to most other people. If a jury determined that Northcutt was making obscene telephone calls to Woodley, then it should determine whether that conduct — that breach of public trust — is so outrageous that it goes beyond the bounds of decency. Therefore, we hold that the trial court erred in entering a summary judgment in favor of Northcutt on the Woodleys' outrage claim.
The Woodleys also contend that the trial court erred in entering the summary judgment in favor of the city on the ground that the Woodleys failed to comply with the notice requirements of the nonclaim statute, § 11-47-23, Ala. Code 1975, which provides as follows:
 "All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred."
In their brief on appeal, the Woodleys argue: "Although the obscene calls occurred more than six months before notice was given, the Woodleys should be allowed to relate the calls to Officer Northcutt's other actions [following Shelby in 1997] for purposes of establishing their claim."
The Woodleys cite no authority to support this contention. Therefore, they have not complied with the requirements of Rule 28(a)(5), Ala.R.App.P. When an appellant fails to comply with Rule 28(a)(5), this court will affirm the judgment of the trial court. Harris v. Harris, 528 So.2d 866
(Ala.Civ.App. 1988). The summary judgment entered in favor of the city is affirmed as to all claims.
The Woodleys contend that the trial court erred in determining that Northcutt was entitled to qualified immunity. Before a public official is entitled to qualified immunity, the court first must find that he acted within the scope of his discretionary authority when the alleged wrongful acts occurred. Couch v. City of Sheffield, 708 So.2d 144 (Ala. 1998). Shelby Woodley presented substantial evidence, albeit circumstantial, tending to show that Northcutt was making obscene telephone calls to her when her husband was not at home. Clearly, making obscene telephone calls is not within the scope of a police officer's discretionary authority. *Page 1097 
Because Northcutt's alleged acts are outside the scope of his authority, he is not entitled to qualified immunity. A genuine issue of material fact exists as to whether Northcutt was making obscene calls. Therefore, the trial court erred in entering the summary judgment in favor of Northcutt on the Woodleys §§ 1983 and 1985 claims and on the outrage claim.
We note that there is no cause of action called "negligent infliction of emotional distress" in Alabama; however, a physical injury is no longer a prerequisite to the recovery of damages for emotional distress in a negligence action. Flagstar Enterprises, Inc. v. Davis, 709 So.2d 1132 (Ala. 1997). Rather than establish a new cause of action, our Supreme Court has "adhered to the principle that negligently causing emotional distress . . . is part and parcel of the traditional tort of negligence." AALAR, Ltd., Inc. v. Francis, 716 So.2d 1141 (Ala. 1998) (includes thorough discussion on recovering damages for emotional distress in negligence cases). However, the Woodleys failed to present any evidence that Northcutt's conduct was negligent.
"`Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care.'" See, Ex parte Anderson, 682 So.2d 467, 469-70 (Ala. 1996) (reversing Hughes v. Anderson, 682 So.2d 463 (Ala.Civ.App. 1995)) (quoting Lynn Strickland Sales Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145-46 (Ala. 1987), overruled on other grounds, Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1252 (Ala. 1998)). An intentional act, on the other hand, has been defined as follows:
 "If the actor has intelligence enough to understand the physical nature and consequences of his act, and . . . consciously directs his action so that the injury of the [plaintiff] is the natural or probable consequence thereof, then that injury is the result of an intentional act."
Sutherland v. Roth, 407 So.2d 139,140 (Ala.Civ.App. 1981).
The acts Northcutt is alleged to have committed, i.e., stalking, harrassing, and making obscene telephone calls, are by their very nature intentional acts. Therefore, the trial court properly entered the summary judgment on the Woodleys's claim of negligent infliction of emotional distress.
Those portions of the summary judgment in favor of Northcutt on the Woodleys' §§ 1983 and 1985 claims, and the Woodleys' claim alleging the tort of outrage are reversed. The remainder of the summary judgment is affirmed. This cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, Monroe, Crawley, and Thompson, JJ., concur.
Robertson, P.J., concurs in result.