MONROE, Judge.
Susan Y. Moore sued Awtrey Realty Company, Inc., and Awtrey Development Company, Inc., alleging breach of contract, misrepresentation, negligence, tortious interference with a contractual relationship, and various other claims. Awtrey Realty and Awtrey Development moved for a summary judgment. The trial court granted a summary judgment on all claims against both defendants. Moore appeals from that summary judgment, but only as it relates to the breach-of-contract claim against Awtrey Realty and the tortious-interference claim against Awtrey Development.
A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Crowne Invs., Inc. v. Bryant, 638 So.2d 873 (Ala.1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party’s favor. Id.
Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala.Code 1975. See Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). To defeat a defendant’s properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The record indicates that Awtrey Realty and Awtrey Development contend that they are not connected, but are two separate companies. The testimony, however, *100 indicates that Al Awtrey owns a 50% interest in both Awtrey Realty and Awtrey Development. Marie Awtrey, A1 Awtrey’s wife, owns a 50% interest in Awtrey Realty. Gene Cole owns the other 50% interest in Awtrey Development.
In 1996, Awtrey Development entered into an agreement with Regency Homes to develop a new subdivision called “The Arbors.” Under this agreement, Awtrey Development would develop and prepare the subdivision lots, and Regency would construct homes on the lots. Awtrey Realty also entered into an agreement with Regency. Under this agreement, Awtrey Realty had the exclusive right to list and sell all the homes in the subdivision.
Moore was an independent real-estate agent. In 1996, she entered into a contract with Awtrey Realty to be one of the two agents to sell the homes in The Arbors.
Two years later, Awtrey Development experienced financial problems. At that time, Awtrey Development owned 50 lots in The Arbors that had not been developed. Awtrey Development entered into an agreement with Regency, by which Regency agreed to purchase from Awtrey Development the remaining 50 lots in The Arbors. They also entered into a new agreement by which Awtrey Development was to develop the remaining lots for Regency. In exchange for Regency’s purchasing the lots from Awtrey Development, Awtrey Realty lost its exclusive right to list and sell the homes in The Arbors. Awtrey Realty informed Moore that Regency had terminated its agreement with Awtrey Realty and that it no longer had the exclusive right to list and sell the homes. Moore’s position as one of the two agents for The Arbors was terminated. Apparently, Moore was offered another position with Awtrey Realty. Thereafter, Moore filed this action.
The agreement Moore entered into with Awtrey Realty stated, in pertinent part:

“EARNED COMMISSION

“Beginning at first closing in the Arbors section of the Lake Crest community and continuing for the life of project, the Sales Associate will be paid a straight 75% split on selling side of all commissions earned for in-house sales. Note: Associate must discuss all possible commission reductions with Management, or commission earned will automatically divert to a 50/50 split basis.”
The contract further states:

“PROJECT END BONUS

“Sales Associates must stay until last unit is closed in community. The Project End Bonus potential of $12,000, will be split 50/50, between two team members.”
Moore testified that she entered into the contract knowing that Awtrey Realty was selling the homes in The Arbors for Regency and that Awtrey Realty had the exclusive right to list and sell all the homes in that community. Moore claims that she entered into the contract knowing that under the contract she was entitled to a commission from the sales of all the homes in The Arbors community, because Awtrey Realty had the exclusive right to sell all the homes. Moore claims that the commission agreement entitled her to a commission from all “in-house” sales of the homes in The Arbors, and Awtrey Realty had the exclusive right to sell all the homes in that community.
Awtrey Realty claims that it performed the contract. Awtrey Realty argues that its obligation to perform under its contract with Moore ended when Regency terminated its contract with Awtrey Realty. Awtrey Realty claims that the term “the life of the project” means that its contract *101 with Moore lasted only during the time Awtrey Realty had the exclusive right to sell the homes for Regency and that when Regency terminated that exclusive right the “project” was over. However, Moore contends that under the terms of the contract, she was entitled to a commission on all the homes sold in The Arbors and that the commission agreement was entered into after Awtrey Realty had received the exclusive right to list and sell all homes in The Arbors community. Taking this into consideration, Moore contends that the “project” was not complete until all the homes in The Arbors were sold. Additionally, the “project-end-bonus” provision of the contract offers a bonus upon the sale of the last home in The Arbors.
A summary judgment is appropriate in a breach-of-contract action when the contract is unambiguous and the facts are undisputed. Gabrielson v. Healthcorp of Eufaula, Inc., 628 So.2d 411, 415 (Ala.1993). “Ambiguity in a contract precludes the trial court from entering a summary judgment.” Whitetail Dev. Corp. v. Nickelson, 689 So.2d 865, 867 (Ala.Civ.App. 1996). A contract is ambiguous when one or more of its terms is reasonably susceptible to more than one interpretation. Id. In this case, the two sides have asserted different interpretations of the contract.
Because the two sides have asserted different reasonable interpretations of the contract, the summary judgment was improper as to Moore’s breach-of-contract claim against Awtrey Realty.
On appeal, Moore also contends that the court erred in granting a summary judgment in favor of Awtrey Development on her claim that it intentionally interfered with a contractual relationship. We agree.
“The elements of the tort of intentional interference with business relations are: 1) the existence of a contract or business relation; 2) the defendant’s knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant’s interference; and 5) damage to the plaintiff as a result of the interference. Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986), citing Restatement (Second) of Torts § 767 (1977).” Soap Co. v. Ecolab, Inc., 646 So.2d 1366, 1371 (Ala.1994).
Moore presented substantial evidence to support her claim that Awtrey Development intentionally interfered with Moore’s contractual relationship with Awtrey Realty. It is undisputed that Awtrey Realty had a contract with Regency to exclusively list and sell all the homes located in The Arbors. Awtrey Development suffered a financial setback and began negotiations with Regency. In those negotiations, Aw-trey Realty, which is supposedly a separate and distinct company from Awtrey Development, lost its right to exclusively list and sell the homes in The Arbors.
Awtrey Development argues that Regency would not have agreed to purchase the remaining 50 lots unless Awtrey Development agreed that Awtrey Realty would no longer have the exclusive right to list and sell the homes in The Arbors. If Awtrey Development is a company separate and distinct from Awtrey Realty, how could Awtrey Development agree to this? Regency terminated its agreement with Awtrey Realty because Awtrey Development agreed to the termination of that agreement.
Awtrey Development argues that the trial court properly entered the summary judgment because, it contends, it was justified in negotiating away Awtrey Realty’s exclusive right to list and sell the homes in The Arbors. Awtrey Development asserts that it had an extensive debt *102 on the remaining lots. This debt was extinguished when Awtrey Development sold the remaining lots to Regency. Awtrey Development claims it was a proper business decision to lose Awtrey Realty’s exclusive right, in exchange for extinguishing its debt. However, “[generally, whether the defendant is justified in the interference is a question to be resolved by the trier of fact. Gross, 494 So.2d at 597, citing Polytec, Inc. v. Utah Foam Products, Inc., 439 So.2d 683 (Ala.1983).” Soap Co., 646 So.2d at 1371.
A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Crowne Invs., Inc. v. Bryant, 638 So.2d 873 (Ala.1994). Keeping in mind that we must view the evidence in the light most favorable to the nonmovant, and that all reasonable inferences are to be drawn in that party’s favor, Crowne Invs., Inc., supra, 638 So.2d 873 (Ala.1994), we conclude that Moore presented substantial evidence creating a genuine issue of material fact as to support her claims. Therefore, the trial court erred in entering the summary judgment on the breach-of-contract claim against Awtrey Realty and the tortious-interference claim against Awtrey Development.
REVERSED AND REMANDED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.
CRAWLEY and THOMPSON, JJ„ concur in the result in part and dissent in part.