On September 20, 1991, Whitetail Development Corporation, Inc. ("Whitetail"), entered into a contract with Barney C. Nickelson and Christy B. Nickelson to resolve a dispute over an option held by Whitetail on 690 acres of real estate owned by the Nickelsons. Under the terms of the contract, Whitetail released its option in exchange for the Nickelsons' promise to pay $225,000 in the event they sold the property or took tangible steps towards its development within one year of the contract's execution. Specifically, the contract stated:
 "2. In the event Nickelson consummates a sale of the property covered by the Option Agreement described above to Don Schmidt,[1] or to any corporation, partnership, limited partnership, or joint venture or the like of which Schmidt is a member, sole owner, or part owner, or to any individual, corporation, partnership, limited partnership or joint venture, or the like, which is affiliated with Schmidt in any substantial way, or referred to Nickelson by Schmidt, or if within one year from the date of execution of this agreement, Nickelson undertakes or enters into any venture that undertakes, any tangible steps towards development of the subject property as or in a golf course or a residential or commercial golf-related community ('Tangible steps' is intended to be construed broadly, and to include but not be limited to the execution of any document reflecting any conveyance or encumbrance of or other agreement concerning the subject property or effecting any physical change in the subject property; 'Tangible steps' is not intended, however, to include any good faith conveyance which is involuntarily made or made merely to satisfy creditors, or any sale by public auction), then, in that event, the following shall occur:
 "(a) Nickelson shall pay the sum of $225,000.00, upon closing of any transaction as described in paragraph 2 above, said sum to be made payable to [Whitetail's attorney] for Whitetail Development Corporation, Inc."
Although Schmidt did not purchase the 690 acres, in the year following the execution of the contract the Nickelsons and several people they brought in as partners pursued some development of the property as a residential golf course community. They hired accountants to forecast the cash receipts and disbursements of the development, a consultant to perform a market feasibility analysis, a landscape architect to plan the development's landscaping, a golf course designer, and surveyors and engineers. Additionally, they cleared trees and vegetation from some of the land, cut the center path of the golf course, and took 268 reservations from prospective purchasers, each of whom had given $1,000 to reserve a lot. The Nickelsons later abandoned their plan to fully develop the land.
In 1993, Whitetail sued the Nickelsons, alleging that their failure to pay the $225,000 constituted a breach of the settlement agreement. Whitetail sought damages in the amount of $225,000, plus interest, and requested an attorney fee. Both Whitetail and the Nickelsons moved for a summary judgment. *Page 867 
The court entered a summary judgment in favor of the Nickelsons; Whitetail appeals. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
When the terms of a contract are unambiguous, the construction of that contract and its legal effect are questions of law for the trial court and, if appropriate, may be decided by summary judgment. Dill v. Blakeney, 568 So.2d 774
(Ala. 1990); McDonald v. United States Die Casting Dev. Co.,585 So.2d 853 (Ala. 1991); J. Paul Jones Hosp. v. Jackson, Coker Assocs., Inc., 491 So.2d 972 (Ala.Civ.App. 1986). When the terms of a contract are ambiguous in any way, however, the determination of the true meaning of that contract is a question of fact for the finder of fact. Dill supra; McDonald,supra; J. Paul Jones Hosp., supra. Ambiguity in a contract precludes the trial court from entering a summary judgment.Id., 491 So.2d at 974. Ambiguity exists when a term is reasonably susceptible to more than one interpretation. Cannonv. State Farm Mut. Auto. Ins. Co., 590 So.2d 191 (Ala. 1991). "All the provisions of a contract must be construed together so as to give harmonious operation to each of them, so far as their language will reasonably permit." City of Fairhope v.Town of Daphne, 282 Ala. 51, 58, 208 So.2d 917, 924 (1968).
In its order, the court stated that the Nickelsons had not taken tangible steps toward the development of the property because, it said: "[n]o financing [had] been obtained; no earth [had] been moved; no construction [had] commenced; no residential building lots [had] been sold; and no real estate closings [had] occurred as contemplated by the agreement." The Nickelsons, in support of their motion for a summary judgment and in their brief on appeal, however, basically concede that they had taken tangible steps toward development of the property. On appeal, the Nickelsons also argue that the case rests upon the fundamental question of the meaning of the term "closing," as used in paragraph two of the settlement agreement. We also note that, although the court's order appears to rest upon the issue of whether the Nickelsons had taken tangible steps, a memorandum attached to the order by the trial court focuses upon the meaning of the term "closing." We, therefore, view that inquiry as determinative in this case.
Whitetail argues that "closing" should be interpreted in a manner reflecting the expansive definition given to the term "tangible steps." The Nickelsons argue that "closing" should be interpreted narrowly to mean a real estate closing. In the memorandum attached to its order, the court adopted the Nickelsons' interpretation, stating: "The [settlement agreement] appears to have involved the sale of real estate, and it would seem illogical to construe the term 'closing' in a non-real estate context based upon the facts of this case." We disagree.
The second paragraph of the settlement agreement necessarily contemplates transactions other than those strictly limited to real estate closings. If this were not the case, then the second paragraph would not include such a broad reference to "tangible steps towards development." Development could reasonably include not only foreseeable transfers of title and legal rights of possession but also physical changes in the subject property and steps taken to that end. The term "closing," as used in this contract, is susceptible to more than one reasonable interpretation and is, therefore, ambiguous. Accordingly, the trial court was precluded from entering a summary judgment.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and CRAWLEY, J., concur.
[1] Just before Whitetail and the Nickelsons executed the settlement agreement, Schmidt had expressed his desire to purchase the property. After the parties had entered into the settlement agreement, Schmidt declined to purchase the subject property. *Page 868