THOMPSON, Judge.
On April 7, 1997, Fred Nunnelley filed a complaint against Ameridata, Inc., seeking amounts due under a lease. Ameridata’s successor-in-interest, GE Capital Information Technology Solutions — North America, Inc. (hereinafter “GECITS”), answered, denying liability; it counterclaimed, seeking a return of overpayment of rents. Both parties moved for a summary judgment. On June 29,1998, the trial court denied both summary judgment motions. In its order, the trial court also dismissed the complaint and the counterclaim, stating:
“Further, based upon the undisputed evidence and the law, this Court concludes that the parties, through their acts and actions, have taken positions contrary to the positions the respective parties have asserted in this case. Through those acts and actions, the court concludes that each party has waived, and is therefore es-topped from asserting against the other party, any monetary claim for damages arising out of the lease of those certain premises described in the lease made the basis of this action.”
Nunnelley appealed, and GECITS cross appealed from that dismissal. The Supreme Court of Alabama transferred the appeals to this court, pursuant to § 12-2-7, Ala.Code 1975.
*240 In the early 1990s, Nunnelley owned a business called American Calculator and Computer Company, Inc. (hereinafter “AC3”), which had retail offices in Montgomery, Tuscaloosa, and Huntsville. Nunnelley also owned several shopping centers, including Boardwalk Shopping Center in Huntsville. On September 1, 1990, AC3 in Huntsville entered into a contract to lease retail space in the Boardwalk Shopping Center.
On March 25, 1992, Magco, Inc., a predecessor-in-interest to GECITS, purchased AC3. We note that GECITS had several predecessors in interest: Magco, Inc., which changed its name to Merieom, Inc.; Ameri-data, Inc., which purchased Merieom, Inc., in December 1993; and, sometime after that, GECITS purchased Ameridata, Inc.
When Magco purchased AC3, Nunnelley retained his ownership of the Boardwalk Shopping Center, in which Huntsville’s AC3 leased retail space. As part of the purchase agreement, Magco purchased all of AC3’s accounts receivable, except “[a]ny amounts owed by or receivable from Fred Nunnelley to [AC3] which [were] carried on the books of Seller on January 31, 1993, as a receivable due from Fred Nunnelley.”
The parties also renegotiated some terms of the lease between AC3 and the shopping center. Under the terms of that lease, AC3 leased approximately 5,000 square feet of retail space in the shopping center for $10 per square foot. The contract reads in part: “the minimum rent shall be payable in monthly installments of_Dollars ($_) each, being an annual rate of $10 per sq. ft. Dollars ($_).” The lease also provided that AC3 pay its proportional share, based on floor area, of common maintenance expenses for the shopping center. Nunnelley testified that the parties agreed to a monthly rent of $4,200.[1] Magco paid rent of $4,200 per month on the retail space for approximately eight months, until November 1992.
On November 5, 1992, Magco sent a letter to Nunnelley proposing a sublease of the retail space occupied by AC3. In that letter, Magco also stated that it had determined that the retail space contained only 3,242.33 square feet and that Magco had decided to pay $2,701.94[2] per month as rent. Magco also claimed that for approximately eight months it had overpaid both its rent and its proportionate share of the maintenance fee for the shopping center.
On January 6, 1993, Nunnelley sent a letter to Merieom (previously Magco) stating that it owed $9,375 for the maintenance charge for 1991 and 1992 and that the company was 2 months behind in its rent in the amount of $1,200 each month. Nunnelley later testified that he made a mistake in that letter and that the underpayment of rent was actually $1,498.02 each month.
Nunnelley testified that he met with Larry Price, the chief financial officer of Merieom, approximately 10 to 12 times to discuss the dispute regarding the rent payments. Nun-nelley testified that he informed Price that $4,200 was the monthly rent for the retail space and that he would pursue collection of any underpayment of rent at the conclusion of the lease’s term. Nunnelley also testified that the discussions with Price did not resolve the dispute. Nunnelley accepted GEC-ITS’s underpayment of rent for approximately 36 months.
In his complaint, Nunnelley sought payment for the maintenance charges for 1991 and 1992 and for the alleged rent underpayment. GECITS counterclaimed, seeking damages for the amount of rent it allegedly overpaid during the lease term.
GECITS moved for a summary judgment on both Nunnelley’s claim and its counterclaim. Nunnelley also moved for a summary judgment, on his claim and on GECITS’s counterclaim. On appeal, both parties argue that the trial court erred in denying their motions for a summary judgment.
A motion for a summary judgment is properly granted when no genuine issue of material fact exists and the moving party is *241 entitled to a judgment as a matter of law. Rule 56; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). Evidence must be viewed in a light most favorable to the non-moving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). After the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to present evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). To carry that burden, the nonmoving party is required to present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘Summary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts undisputed.’ ” Gabrielson v. Healthcorp of Eufaula, Inc., 628 So.2d 411, 415 (Ala.1993) (citations omitted). Here, each party has assigned a different interpretation to the rent provision of the contract. Each party’s motion for a summary judgment was based on that party’s interpretation of the contract. A contract is ambiguous when one or more of its terms is reasonably susceptible to more than one interpretation. Whitetail Dev. Corp. v. Nickelson, 689 So.2d 865 (Ala.Civ.App.1996). Whether a contract is ambiguous is a question of law for the trial judge. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App.1990). Although the trial court made no specific finding that the contract was ambiguous, we think such a finding to be implicit in his judgment. Further, an appellate court must affirm a judgment if it is correct for any reason. Ex parte Williams, 571 So.2d 987 (Ala.1990). Given the lack of detail regarding the specific terms of the rent provision and the provision regarding the maintenance fees, we conclude that those terms of the lease are ambiguous. “Ambiguity in a contract precludes the trial court from entering a summary judgment.” Whitetail Dev. Corp. v. Nickelson, 689 So.2d 865, 867 (Ala.Civ.App. 1996). The trial court correctly denied each party’s motion for a summary judgment.
In the same order in which it denied the summary-judgment motions, the trial court, on its own motion, dismissed with prejudice both Nunnelley’s claim for the alleged underpayment of rent and GECITS’s counterclaim for the alleged overpayment of rent. Each party argues that the trial court erred in dismissing its claims.
The trial court based its dismissal of Nunnelley’s claim on its finding that Nun-nelley had waived his right to seek damages based on any alleged breach of the lease contract. Because some evidence was presented on the issue whether Nunnelley’s actions constituted a waiver, we interpret the trial court’s dismissal of Nunnelley’s claim as a judgment as a matter of law. See Williams v. Ward, 667 So.2d 1375 (Ala.Civ. App.1994). No presumption of correctness attaches to a trial court’s entry of a judgment as a matter of law. K.S. v. Carr, 618 So.2d 707 (Ala.1993). “A judgment as a matter of law is proper when the nonmoving party has failed to present substantial evidence regarding some essential element of his claim or when there is no disputed issue of material fact upon which reasonable persons could differ.” State Dep’t of Pub. Safety v. Sexton, [Ms. 2960242, June 12, 1998]-So.2d-(Ala.Civ.App.1998).
A waiver occurs when a party voluntarily surrenders or relinquishes a known right, benefit, or advantage. Waters v. Taylor, 527 So.2d 139 (Ala.Civ.App.1988). A party’s intent to waive a right may be established by any acts of the party that would manifest a waiver of his rights. Id. “This intention to waive a right may be found where one’s course of conduct indicates the same or is inconsistent with any other intention.” Waters v. Taylor, 527 So.2d at 141. Generally, the issue whether there has been a waiver is a question for the finder of fact. Putman Constr. & Realty Co. v. Byrd, 632 So.2d 961 (Ala.1992).
*242 We note that on appeal Nunnelley argues that the lease contract contains a nonwaiver provision. However, nothing in the record indicates that Nunnelley made that argument before the trial court. This court may not consider an issue raised for the first time on appeal. Abbott v. Hurst, 643 So.2d 589, 593 (Ala.1994). This court will address only that portion of the argument that Nunnelley presented to the trial court.
GECITS presented evidence indicating that Nunnelley accepted the alleged underpayment of rent for approximately 36 months. Nunnelley rebutted that evidence •with his undisputed testimony that he met with Price, the chief financial officer of GEC-ITS’s predecessor-in-interest, approximately 10 to 12 times to discuss the dispute regarding the interpretation of the contract. Nun-nelley’s testimony that he informed Price that he would pursue the alleged underpayment of rent and the nonpayment of the maintenance-fee charges at the conclusion of the lease term is also undisputed. We conclude that the evidence creates a question of fact as to whether Nunnelley waived his rights under the contract. Thus, the trial court erred in dismissing Nunnelley’s claim against GECITS.
GECITS argues that the trial court erred in finding that it had waived its rights to recover the alleged overpayment of rent pursuant to the lease. In a letter dated November 5, 1992, an officer of Mericom notified Nunnelley of the dispute regarding the monthly rent amount, and the company began making monthly rent payments at the lower rate it had calculated. In that letter, the Mericom representative also stated that the alleged overpayment of rent would be reduced by Mericom’s pro-rata share of the common-area maintenance fees. GECITS claims that it has offset the overpayment of rent against its share of some of the common-area maintenance charges due during the lease term. Thus, we conclude that GECITS’s actions create a question of fact as to whether GECITS intended to waive its rights to recover any alleged overpayment of rent. See Waters v. Taylor, supra. The trial court also erred in dismissing GECITS’s claim against Nunnelley.
The judgment of dismissal is reversed, both as to the claim and as to the counterclaim.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
MONROE and CRAWLEY, JJ., concur in the result.

. This figure seems to be derived from rounding off 5,000 sq. ft. x $10 per sq. ft. annually = $50,000 divided by 12 months = $4,167 per month.

. Calculated thus: 3,242.33 sq. ft. x $10 per sq. ft. annually = $32,423.30 divided by 12 months = $2,701.94 per month.