Rel: February 27, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0041

_____

### Norman Horton

### v.

### David Colvin

### Appeal from Dale Circuit Court
### (CV-24-3)

EDWARDS, Judge.

In February 2024, Norman Horton filed in the Dale Circuit Court ("the trial court") a complaint against David Colvin in which Horton alleged that Colvin had defamed him by posting certain comments on various social-media accounts, specifically stating: "When are you going

to do something about the METH HOUSE that you sponsor!!!!," and by making comments at a political meeting indicating that Horton was associated with a prostitution ring.[1]  In the complaint, Horton further alleged that Colvin's defamatory comments had resulted in "election interference" and the loss of a state-senate race in which Horton had been a candidate.  Horton also alleged that Colvin had interfered with his business relationships and had harassed certain persons by discharging a firearm during their visit to tour Horton's business premises for the purpose of considering whether to lease the premises, which adjoins property owned by Colvin.[2]  Finally, Horton averred that Colvin had converted to his own use a driveway that Horton had allegedly been using

---

[1]Horton properly categorized the statements made in comments on various social-media accounts as libel and the statements made at the political meeting as slander.  Blevins v. W.F. Barnes Corp., 768 So. 2d 386, 390 (Ala. Civ. App. 1999) (explaining that "[t]here are two types of defamation: libel, which involves the use of print media to publish the defamatory comment, and slander, which involves the oral expression of a defamatory comment").

[2]We note that the act alleged to have been committed by Colvin -- discharging a firearm -- was not directed at Horton; in fact, based on the complaint and the affidavits appended to the complaint, Horton was not present at the time of the alleged act.

pursuant to an agreement Horton had with another property owner, Buddy Skelton.

In March 2024, Colvin filed a handwritten answer generally denying the allegations of the complaint; once he secured counsel, Colvin amended his answer. In his amended answer, Colvin admitted to having made the social-media comments. He also asserted the affirmative defenses of truth, "substantial truth," "fair comment," and consent. Colvin further asserted a "qualified privilege" and alleged that Horton was a public figure and, therefore, that Horton must prove that the statements were made with "actual malice."[3]

Horton filed a motion in which he sought to add his wife, Roslyn, as a plaintiff, but, after Colvin objected, the trial court denied that motion. Horton also moved to compel Colvin to answer certain of his discovery

---

[3]Technically, a public figure must establish "constitutional malice," not "actual malice." See Wiggins v. Mallard, 905 So. 2d 776 (Ala. 2004) (discussing the two types of malice and stating that the evidence required to prove them often overlaps). To prove "constitutional malice," a plaintiff must establish that the defendant made his or her statement "'with actual knowledge of its falsity or ... with reckless disregard of its truth or falsity.'" Wiggins, 905 So. 2d at 786 (quoting Mobile Press Register, Inc. v. Faulkner, 372 So. 2d 1282, 1284 (Ala. 1979), disapproved of on other grounds by Nelson v. Lapeyrouse Grain Corp., 534 So. 2d 1085, 1092 (Ala. 1988)).

requests. Although Colvin responded and Horton replied to that response, the trial court did not rule on Horton's motion.

On July 17, 2024, well after he had filed his answer to the complaint, Colvin filed a document that he titled "Motion to Dismiss." In that motion, regarding the defamation claims, Colvin argued that Horton was a "limited public figure" and therefore that he was required to prove actual malice; that the "meth house" statement was "hyperbolic and constitute[d] an opinion"; that the allegedly libelous statement regarding the "prostitution ring" did not actually accuse Horton of any connection to such activity; and that Horton had not provided evidence that Colvin's allegedly defamatory statements had resulted in his losing the election. Regarding Horton's other claims, the motion to dismiss argued that Horton could not maintain an action against Colvin arising out of the erection of a barrier across the driveway because, he said, Skelton, the owner of the property over which the driveway runs, had erected the barrier. Colvin disavowed knowledge of any incident involving discharging a firearm and also contended that Horton lacked standing to

4

bring the "harassment with display of deadly force" claim.[4]   Colvin appended several documentary exhibits to his motion.  The trial court set the motion to dismiss for a hearing to be held on August 12, 2024, but, on Horton's motion, the trial court continued that hearing to October 15, 2024.

After the hearing, the trial court entered an order on November 8, 2024, dismissing Horton's complaint without stating its reasoning.  On December 9, 2024, Horton filed a timely postjudgment motion and a separate motion seeking leave to amend his complaint.  The trial court

---

[4]In his motion to dismiss, Colvin referred to a lack of standing; however, his argument appears to be that, because other persons and not Horton, had endured the alleged harassment, Horton cannot maintain an action arising from any such harassment, which is, instead, an argument that Horton is not the real party in interest. State v. Property at 2018 Rainbow Drive, 740 So. 2d 1025, 1027 (Ala. 1999) (quoting Dennis v. Magic City Dodge, Inc., 524 So. 2d 616, 618 (Ala. 1988), quoting in turn 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1542 (1971)) ("'"[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether [the] plaintiff has a significant interest in the particular action he has instituted."'").  Rule 17(a), Ala. R. Civ. P., provides, in pertinent part, that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest."

denied those motions by separate orders entered on December 10, 2024. Horton filed a timely notice of appeal.

On appeal, Horton argues that the trial court erred by dismissing his complaint. He argues that, because Colvin attached documentary evidence to his motion to dismiss, the motion was converted to a motion for a summary judgment and that the trial court committed error by failing to grant him leave to amend his complaint, by dismissing the complaint without prejudice after the applicable statute-of-limitations periods had run, by failing to compel discovery as requested, and by granting the motion to dismiss while discovery was still pending. He further contends that the facts that he alleged regarding his defamation claims were sufficient to withstand a motion to dismiss filed pursuant to Rule 12(b)(6), Ala. R. Civ. P. He also argues that he adequately stated claims of "election interference," tortious interference with his business relationships, harassment, and conversion. Finally, he contends that the trial court was required to afford him "nonprejudicial treatment" as a pro se litigant, that he was denied due process because of "procedural

irregularities," and that the trial court was required to enter a "reasoned order" on the dispositive motion to dismiss.[5]

Before considering the propriety of the trial court's dismissal of Horton's claims, we will first consider Horton's procedural arguments in support of reversal. Initially, we must reject Horton's contention that the trial court was required to afford him "nonprejudicial treatment" and construe his pro se pleadings under "less stringent standards" than pleadings drafted by counsel. Horton relies on federal caselaw, like Estelle v. Gamble, 429 U.S. 97, 106 (1976), to support his argument. Although federal authorities require the federal courts to take a more

---

[5]In his brief on appeal, Horton also raises an argument relating to the assessment of attorney fees against a pro se party; however, the record does not contain any order of the trial court directing Horton to pay any or all of Colvin's attorney fees. See Rule 28(a)(5), Ala. R. App. P. (stating, in pertinent part, that, "[i]n civil cases, a statement of the case [in a parties' brief on appeal] should also identify the adverse ruling or rulings from which the appeal is taken and asserted as error on appeal ....."). We therefore decline to consider Horton's attorney-fee argument. See Ramer v. Ramer, 289 So. 3d 819, 823 (Ala. Civ. App. 2019) (quoting Lewis v. Providence Hosp., 483 So. 2d 398, 398 (Ala. 1986)) ("'Only adverse rulings by the trial court are reviewable on appeal.'").

lenient approach to the evaluation of pro se pleadings, Alabama law treats pro se parties no differently than those represented by counsel.[6]

> "While we are not unsympathetic to pro se litigants ..., a pro se litigant must nonetheless comply with legal procedure and court rules. Jones v. Seibert, 624 So. 2d 639 (Ala. Civ. App. 1993). '[T]he operation of the courts of this state is governed by rules which are no more forgiving to a pro se litigant than to one represented by counsel.' Black v. Allen, 587 So. 2d 349, 349 (Ala. Civ. App. 1991). See also Lockett v. A.L. Sandlin Lumber Co., 588 So. 2d 889 (Ala. Civ. App. 1991)."

Overy v. Murphy, 827 So. 2d 804, 806 (Ala. Civ. App. 2001); see also Bowman v. Pat's Auto Parts, 504 So. 2d 736, 737 (Ala. Civ. App. 1987) ("The rules of procedure which govern the operation of the trial courts thereby leading to the orderly transaction of its business are no more

---

[6]In Estelle, the United States Supreme Court, held that "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" 429 U.S. at 106 (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). In addition, the Estelle Court stated that pro se complaints "can only be dismissed for failure to state a claim if it appears '"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" Id. (quoting Haines, 404 U.S. at 521, quoting in turn Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). As discussed infra, Alabama courts use the "no set of facts" standard when evaluating any Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss. See Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993) (stating that "a Rule 12(b)(6)[, Ala. R. Civ. P.,] dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief").

forgiving to a pro se litigant than to one represented by counsel."). We find no error in the trial court's alleged failure to have treated Horton more leniently based on his status as a pro se plaintiff.

Similarly, we reject Horton's contention that the trial court was required to enter a detailed or "reasoned" dismissal order. Although findings of facts and conclusions of law are required to be included in certain judgments or orders in limited instances under particular statutes, see, e.g., Ala. Code 1975, § 25-5-88 (requiring that a judgment in a workers' compensation case contain findings of facts and conclusions of law), a trial court is not required to state its reasoning for entering a dispositive order or judgment in every action. In fact, Rule 52(a), Ala. R. Civ. P., specifically states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule[] 12[, Ala. R. Civ. P.]." See Ex parte Williamson, 329 So. 3d 664, 672 (Ala. Civ. App. 2020) (explaining that Rule 52(a) indicates that a trial court need not state its reasoning in an order dismissing a party's claims).

Horton's argument that Colvin's motion to dismiss was converted into a motion for a summary judgment is also unavailing. Although Colvin appended materials outside the pleadings to his July 2024 motion,

9

under current supreme-court precedent, this court is not permitted to presume that the trial court considered the materials that were appended to Colvin's July 2024 motion in deciding whether to dismiss the complaint. See Ex parte Price, 244 So. 3d 949, 955 (Ala. 2017) (indicating that, unless the trial court indicates that it considered materials submitted outside the pleadings in deciding a Rule 12(b)(6), Ala. R. Civ. P., motion, an appellate court must presume that the trial court did not consider those materials and that the motion was therefore not converted to a Rule 56, Ala. R. Civ. P., motion for a summary judgment); Ray v. Ray, 413 So. 3d 733, 736 (Ala. Civ. App. 2024) (explaining that, "for a motion to dismiss to be converted to a motion for a summary judgment[,] the record must affirmatively reflect that the trial court, when making its decision to grant a motion to dismiss, considered matters outside the pleadings"); but see Newman's Med. Servs., Inc. v. Mobile Cnty., 370 So. 3d 228, 231 (Ala. 2022) (treating a Rule 12(b)(6) motion to dismiss as having been converted to a Rule 56 motion for a summary judgment when "[n]othing in the record … indicate[d] that the trial court specifically excluded any [submitted] evidence from its consideration"). The record does not definitively establish that the trial court considered the

materials appended to Colvin's motion to dismiss, and we therefore cannot consider the motion to dismiss to have been converted to a motion for a summary judgment.

Although Horton argues that "the [t]rial court [e]rred by allowing a [Rule] 12(b)(6)[, Ala. R. Civ. P., motion after discovery had commenced and before it's [sic] completion," Horton's brief, p. 44, he cites no authority indicating that a trial court may not consider a motion to dismiss while discovery is pending. See Rule 28(a)(10), Ala. R. App. P. (requiring that an appellant support his arguments with appropriate legal authorities); White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008) ("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position."). Neither of the two Alabama authorities Horton provides for the stated proposition -- Hornsby v. Sessions, 703 So. 2d 932, 938 (Ala. 1997), and Ex parte Harrington, 450 So. 2d 99, 100 (Ala. 1984) -- address any issue regarding pending discovery. To the extent that he relies on Reeves v. Porter, 521 So. 2d 963, 965 (Ala. 1988), and Hope v. Brannan, 557 So. 2d 1208, 1212 (Ala. 1989), which both address the issue whether a summary-judgment motion may be granted when discovery

11

remains pending, his reliance is misplaced because, as we have explained, Colvin's motion to dismiss was not converted to a motion for a summary judgment. Thus, Horton has failed to present a legally supported argument on this issue, and we decline to further consider this basis for his challenge to the trial court's November 8, 2024, dismissal order. See Walden v. Hutchinson, 987 So. 2d 1109, 1120 (Ala. 2007) (indicating that a legally unsupported argument results in a failure of the appellant to effectively challenge a judgment based on that argument).

Likewise, Horton's arguments that the trial court erred by failing to compel discovery and by dismissing his action without prejudice after the applicable statute-of-limitations periods on his claims had run are unconvincing. Certainly, Rule 26, Ala. R. Civ. P., "contemplates a broad right of discovery," Ex parte AMI West Alabama Gen. Hosp., 582 So. 2d 484, 485 (Ala. 1991), but Horton has not presented a legally supported argument that the trial court's decision to withhold a ruling on Horton's motion to compel discovery pending resolution of the motion to dismiss was error. He has also failed to provide authority to support his contention that a trial court may not dismiss an action if the applicable

statute-of-limitations periods have run on the claims asserted in that action.[7] His failure to present arguments supported by legal authority permits us to reject those arguments. See Walden, 987 So. 2d at 1120.

We also reject Horton's argument that the trial court erred in failing to permit him to amend his complaint. Horton relies on Rule 15(a), Ala. R. Civ. P., and the principle expressed therein that amendments "shall be freely allowed when justice so requires." Horton does not, however, cite any authority requiring that a trial court allow an amendment after the dismissal of an action. We find such authority in Rule 78, Ala. R. Civ. P., which provides that, "[u]nless the court orders otherwise, an order granting a motion to dismiss shall be deemed to permit an automatic right of amendment of the pleading to which the motion is directed within ten (10) days from service of the order." Horton did not file an amended complaint within 10 days of the service of the November 8, 2024, dismissal order, and we cannot hold the trial court in

---

[7]The citation that Horton includes in his brief -- Jones v. City of Decatur, 53 So. 3d 885 (Ala. 2010) -- is an incorrect citation for that case, which is reported at 301 So. 2d 235; in any event, Jones, which addresses an appeal from a criminal conviction for driving while intoxicated, is not authority for any proposition relating to dismissals without prejudice or the expiration of statute-of-limitations periods.

error for failing to permit Horton to amend his complaint more than 10 days after the entry of that order.

Finally, we reject Horton's arguments that he was deprived of due process by not being notified of witness subpoenas and by "procedural irregularities" allegedly committed by the trial court. Horton's allegations of procedural irregularities include allegations that the trial court applied the incorrect standard to evaluate his complaint, that the trial court improperly considered matters outside the pleadings, and that the trial court failed to compel discovery. He also complains that the trial court denied his postjudgment motion too quickly. We have already addressed Horton's complaints regarding the motion to compel discovery and the trial court's alleged consideration of extraneous materials. Our discussion of the merits of the dismissal of Horton's complaint, infra, will adequately address any concerns about the appropriate standard for reviewing his complaint. The trial court's swift ruling on Horton's postjudgment motion is, as far as we know, not a basis for error. To the extent that Horton further complains that these "procedural irregularities," coupled with the fact that Colvin's wife works at the courthouse, creates an "appearance of impropriety," Horton admits that

14

he did not request that the trial-court judge recuse herself. Thus, we need not further consider Horton's argument relating to any appearance of impropriety. See Ross v. Luton, 456 So. 2d 249, 255 (Ala. 1984) (indicating that "disqualification of a trial judge for interest or prejudice may be waived" if not asserted before entry of a particular order or judgment).

Before we begin our review of Horton's arguments that his complaint adequately stated claims of defamation, "election interference," tortious interference with his business relationships, harassment, and conversion, we must first determine the proper standard of review of the November 8, 2024, order. Our supreme court has explained that a "[Rule] 12(b)(6)[, Ala. R. Civ. P.,] motion should not be used to test the sufficiency of a complaint after a responsive pleading has been filed"; this is so because "Rule 12(b) provides that a motion asserting the defense of failure to state a claim 'shall be made before pleading if a further pleading is permitted.'" Sims v. Lewis, 374 So. 2d 298, 301 (Ala. 1979). Thus, Colvin's July 2024 motion was not a timely filed Rule 12(b)(6) motion. Instead, as our supreme court has explained, "a defense of failure to state a claim upon which relief can be granted,

although typically raised pursuant to Rule 12(b)(6), can be raised after an answer has been filed by moving for a judgment on the pleadings," pursuant to Rule 12(c), Ala. R. Civ. P. Pontius v. State Farm Mut. Auto. Ins. Co., 915 So. 2d 557, 562 (Ala. 2005). Our supreme court has further observed that,

> "'often times, after a responsive pleading has been filed, a defendant will move to dismiss for failure to state a claim under Rule 12(c), even though there may be no need to refer to the responsive pleading, such that it would have been proper to move for dismissal under Rule 12(b)(6). In such an instance, it is proper to treat the motion in the manner as one brought pursuant to Rule 12(b)(6). See [5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368] at 515 [(2d ed. 1990)]. Moreover, where the pleadings are closed but a defendant mistakenly moves to dismiss under Rule 12(b)(6), instead of Rule 12(c), the Sixth Circuit has held that "where the substance of the motion is plain," it is proper to treat a motion styled as one under Rule 12(b)(6) as if it were brought under Rule 12(c). See Wagner v. Higgins, 754 F.2d 186, 188 (6th Cir. 1985).'"

Pontius, 915 So.2d at 562 (quoting Reed Elsevier, Inc. v. TheLaw.net Corp., 269 F. Supp. 2d 942, 947 (S.D. Ohio 2003)).

Thus, the July 2024 motion filed by Colvin, in which he sought a dismissal of Horton's complaint based on its alleged failure to state a claim upon which relief can be granted, was untimely. However, the trial court could properly have considered that motion in one of two ways. The

16

trial court could have considered the July 2024 motion as a Rule 12(c) motion seeking dismissal of the complaint for failure to state a claim upon which relief can be granted and could have therefore applied the standard applicable to a Rule 12(b)(6) motion in evaluating that motion. See Hall v. Environmental Litig. Grp., P.C., 248 So. 3d 949, 957 (Ala. 2017) (treating a Rule 12(b)(6) motion filed after the close of the pleadings as a 12(c) motion seeking relief based on the ground that the complaint failed to state a claim for relief and reviewing the motion under the standard applicable to a Rule 12(b)(6) motion). The trial court could also have treated Colvin's motion as a Rule 12(c) motion seeking a judgment as a matter of law based on the facts contained in the pleadings, i.e., Horton's complaint and Colvin's answer. See Ex parte Mutual Sav. Life Ins. Co., 765 So. 2d 649, 650 (Ala. 1998) (explaining that an appellate "[c]ourt looks to the essence of a motion, not just to its title, to determine how the motion should be treated under our Rules of Civil Procedure").

In his brief, Horton argues that he properly pleaded his libel claim (see note 1, supra) by providing the following statement allegedly posted by Colvin on various social-media pages that stated: "When are you going to do something about the METH HOUSE that you sponsor!!!!," by

17

alleging that the statement was false, and by alleging harm to his reputation. He further asserted that Colvin's statement was either made with knowledge of its falsity or with a reckless disregard as to its truthfulness. Horton further explains that he alleged that Colvin had taken certain actions that could support a determination that he was acting out of personal ill will or malice when he made the alleged "meth house" statement. Moreover, Horton contends that the alleged "meth house" statement imputed criminal conduct that would render the statement libel per se, which would not require Horton to establish special damages.

Upon review of Horton's argument, we conclude that, whether analyzed under the standard of review applicable to an order granting a motion under either Rule 12(b)(6) or Rule 12(c), the trial court could not have properly determined that Horton's complaint, insofar as it is premised on his allegations of libel arising from the alleged "meth house" statement, should be dismissed.

> "'To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm

18

(actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).'"

<u>Delta Health Grp., Inc. v. Stafford</u>, 887 So. 2d 887, 895 (Ala. 2004) (quoting <u>Nelson v. Lapeyrouse Grain Corp.</u>, 534 So. 2d 1085, 1091 (Ala. 1988)). Moreover,

> "[t]he effect and tendency of the language used, not its form, is the criterion determining its actionable quality. It is not necessary to render words defamatory and actionable that they make defamatory charges in direct terms; they are equally actionable if the charge is made indirectly or by necessary inference, and it matters not how artful or disguised their meaning is concealed, if they are in fact defamatory. In determining their actionable character, they are to be taken in their natural meaning, and according to the sense in which they appear to have been used, and the idea they are adapted to convey to those who heard them. A forced construction is not to be put upon them in order to relieve the defendant from liability."

<u>Marion v. Davis</u>, 217 Ala. 16, 18-19, 114 So. 357, 359 (1927).

If the July 2024 motion is evaluated as a Rule 12(c) motion requesting that the complaint be dismissed for failure to state a claim under Rule 12(b)(6), this court must evaluate it under the standard applicable to a Rule 12(b)(6) motion and may not consider anything but the allegations of the complaint.

> "'"On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6), [Ala. R. Civ. P.,] is whether, when

19

the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader <u>could prove any set of circumstances that would entitle [him] to relief</u>. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears <u>beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff</u> to relief."'"

<u>Flickinger v. King</u>, 385 So. 3d 504, 511 (Ala. 2023) (quoting <u>Lloyd Noland Found., Inc. v. HealthSouth Corp.</u>, 979 So. 2d 784, 791 (Ala. 2007), quoting in turn <u>Nance v. Matthews</u>, 622 So. 2d 297, 299 (Ala. 1993)).

Horton alleged that the statement was published by Colvin on several posts on Horton's own social-media page related to his campaign for state senate and on various pages associated with other groups, including a dog-hunting association and multiple "buy, sell, and trade" groups. Horton alleged that the statement was false, that it had made him the subject of "disgrace, ridicule, odium, and/or contempt," and that it had resulted in his losing the election for state senate. Moreover, although Horton contended in his complaint that he was not required to establish malice, he alleged that Colvin had knowledge of the falsity of his statement or had acted with a reckless disregard as to its truthfulness. <u>See</u> note 3, <u>supra</u>. He also alleged facts indicating that

Colvin held a possible personal animus toward him, including that Colvin was not a constituent of the district in which Horton conducted his campaign, that Colvin had taken steps to interfere with Horton's access to his business property, which is located on property adjoining property owned by Colvin, and that Colvin knew or could possibly have ascertained the fact that Horton did not "sponsor a meth house"; those allegations, if proven, could be sufficient to establish malice or negligence on the part of Colvin.[8] Finally, Horton contended that the statement accused him of a crime and, that, therefore, the statement was

---

[8]We note that "the determination of malice in defamation cases is particularly in the province of the jury." Cousins v. T.G. & Y. Stores Co., 514 So. 2d 904, 906 (Ala. 1987). Furthermore, regarding the requirement that the defendant be negligent if the plaintiff is a private person, we note that,

"[i]n determining whether the defendant acted as a reasonable, prudent person under the circumstances in publishing the defamatory communication the finder of fact may take into account the thoroughness of the check that a reasonable person would make before publishing the statement, the nature of the interests that the defendant was seeking to promote in publishing the statement, and the extent of damage to which the statement exposed the plaintiff's reputation."

Mead Corp. v. Hicks, 448 So. 2d 308, 312 (Ala. 1983).

defamatory per se.[9] The allegations contained in the complaint regarding the statement associating Horton with a "meth house" are sufficient to survive a motion to dismiss reviewed under the Rule 12(b)(6) standard. That is, his complaint alleges facts that, if proven, would entitle Horton to relief.

If, instead, the motion is considered to be a Rule 12(c) motion for a judgment on the pleadings, which would require this court to consider both the complaint and the answer in our analysis, Horton's libel claim based on the "meth house" statement still survives.

> "When a motion for judgment on the pleadings is made by a party, 'the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.' B.K.W. Enters., Inc. v. Tractor & Equip. Co., 603 So. 2d 989, 991 (Ala. 1992). See also Deaton, Inc. v. Monroe, 762 So. 2d 840 (Ala. 2000). A judgment on the pleadings is subject to a de novo review. Harden v. Ritter, 710 So. 2d 1254, 1255 (Ala. Civ. App. 1997). A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in

---

[9]The word "sponsor" connotes "one who assumes responsibility for some other person or thing" or "a person … that pays for or plans and carries out a project or activity." Merriam-Webster's Collegiate Dictionary 1206 (11th ed. 2020). Thus, the statement could be read to indicate that Horton bears some responsibility for, or is involved in some way in, the activities of a "meth house" and therefore in the production of methamphetamine. The production of methamphetamine is illegal. See Ala. Code 1975, §§ 13A-12-217 and 13A-12-218.

the light most favorable to the nonmoving party. Id. at 1255-56. ... [I]n deciding a motion for a judgment on the pleadings, the trial court is bound by the pleadings. See Stockman v. Echlin, Inc., 604 So. 2d 393, 394 (Ala. 1992)."

Universal Underwriters Ins. Co. v. Thompson, 776 So. 2d 81, 82-83 (Ala. 2000). "'A Rule 12(c) motion for judgment on the pleadings disposes of a case when the material facts are not in dispute.'" Harden v. Ritter, 710 So. 2d 1254, 1255 (Ala. Civ. App. 1997) (quoting McCullough v. Alabama By-Prods. Corp., 343 So. 2d 508, 510 (Ala. 1977)).

Colvin admitted in his answer that he had made the "meth house" statement in social-media posts. However, Colvin asserted in his answer the defenses of truth, substantial truth, "fair comment/opinion," and consent.[10] He also contended that Horton was a public figure and was therefore required to show malice to succeed on his defamation claims. Finally, Colvin asserted in his answer that Horton had "not shown that [he] published the question or statement ... with negligence" and that

---

[10]Colvin also asserted the defense of conditional privilege regarding statements that he admittedly had made at a political meeting that Horton had alleged "linked" Horton to a "prostitution ring." As noted in note 1, supra, the complaint does not contain sufficient information regarding those alleged statements to permit analysis of the sufficiency of the claim of slander premised upon them.

Colvin had not "caused or contributed to the alleged injury that [Horton] may have sustained."

In Colvin's answer, he included factual averments that Horton owned a rental house in Colvin's community and that the tenants of that house "were known to local law enforcement for their illegal activities and drug use or sale" and that Horton had "ignored or failed to respond to [Colvin] and others in the community about their concerns [regarding] the rental house." Colvin also asserted that, because Horton had indicated to Colvin that "it was of no concern to [Colvin] what was happening at the rental home," he had used the statements he published on the social-media pages to address the issue of public concern created by the tenants of the rental house. Thus, Colvin contended that the "meth house" statement was true, substantially true, or a matter of public concern giving rise to a right of "fair comment."

A review of the complaint and the answer does not convince this court that no issue of material fact exists. Horton alleges that the "meth house" statement is false, and Colvin asserts that it is true or "substantially true." Even if the trial court concluded that Horton was a public figure and was required to prove constitutional malice, facts

24

alleged in the complaint indicate that Colvin knew that the statement that Horton "sponsored" a "meth house" was not true or that he had made the statements recklessly, despite having the ability to ascertain their truth or falsity. Thus, the complaint, insofar as it alleged libel based on the "meth house" statement, was not subject to being resolved on a motion for a judgment on the pleadings under Rule 12(c). Having determined that the complaint's allegations regarding the libel claim stemming from the alleged "meth house" statement state a claim and that issues of material facts exist regarding that claim, we cannot affirm the trial court's November 8, 2024, order dismissing Horton's libel claim, and we therefore reverse the order insofar as it dismisses that claim.

However, we reach a contrary result regarding Horton's other defamation allegation -- that Colvin slandered Horton when Colvin "publicly linked [Horton] to 'prostitution rings.'" Horton did not provide in his complaint the statements that Colvin allegedly made, thereby preventing the trial court or this court from being able to assess whether those statements could serve as a basis for liability. Although the alleged statements were produced in discovery and presented as an exhibit to the July 2024 motion, this court is precluded from considering that exhibit in

25

reviewing the November 8, 2024, order granting that motion under either the Rule 12(b)(6) standard or the Rule 12(c) standard. See, e.g., Universal Underwriters, 776 So. 2d at 83 (stating that, because the record was silent regarding whether a trial court had considered an affidavit submitted with a motion on the pleadings, the appellate court would not consider the affidavit and would "look only to the pleadings in determining whether the trial court [had] erred in granting [the] motion"). Accordingly, we affirm the trial court's November 8, 2024, order dismissing Horton's slander claim.

In his complaint, Horton asserted a conversion claim against Colvin for allegedly "convert[ing] use of [a driveway], which was developed and used by [Horton and his former business] for over 30 years."[11] On appeal, Horton argues that, although his claim is for conversion of what he characterizes as "a right to use real property," i.e., the driveway to his business property, the trial court erred in dismissing the claim because, he says, he alleged facts that, if proven, would establish that Colvin had

---

[11]In his complaint, Horton averred that he had owned a business or businesses that had formerly operated on the premises adjoining Colvin's property. Those businesses were referred to as "Stormins Garage," "Stormins Towing Service," and "Stormins Wrecker Sales."

26

"asserted dominion over the permissive agreement [between Horton and Skelton] granting access to the driveway." He says that his claim is premised on his allegation that "the permissive right of use, an agreement long recognized and acted upon, was wrongfully interfered with and 'converted' by" Colvin. However, as Horton admits, the tort of conversion involves exercising dominion over someone else's <u>personal</u> property and not real property. <u>See</u> <u>Baxter v. SouthTrust Bank of Dothan</u>, 584 So. 2d 801, 805 (Ala. 1991) ("An action for conversion will not lie for the taking of real property …."). He presents no legal authority indicating that a "permissive right of use" or an agreement relating to the use of real property may be converted. <u>See</u> Rule 28(a)(10); <u>White Sands Grp.</u>, 998 So. 2d at 1058. We conclude therefore that Horton's claim of conversion was properly dismissed under either Rule 12(b)(6) or Rule 12(c).

Similarly, we affirm the trial court's November 8, 2024, order insofar as it either dismissed Horton's "election interference" claim under Rule 12(b)(6) or entered a judgment on the pleadings on that claim under Rule 12(c). In his brief to this court, Horton has failed to provide authority or to present a cogent legal argument concerning the viability

27

of his claim that Colvin's defamatory statements had resulted in "election interference." See Rule 28(a)(10); White Sands Grp., 998 So. 2d at 1058. Horton attempts to incorporate arguments he made in the trial court into his brief, but this court does not permit a party to incorporate by reference arguments made in the trial court. See Perry v. State Pers. Bd., 881 So. 2d 1037, 1039 (Ala. Civ. App. 2003) (rejecting an attempt by the appellant to "incorporate by reference the brief she filed in the circuit court" and stating that "Rule 28 does not allow such a procedure" and that "Rule 28(i), Ala. R. App. P., provides only for incorporation of arguments contained in other parties' appellate briefs, not for incorporation of briefs filed in circuit courts").

We also affirm the trial court's November 8, 2024, order insofar as it dismissed Horton's claim of interference with his business relationships or entered a judgment on the pleadings on that claim. The elements of an intentional interference with business relations are "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." White

*Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). Horton's

allegations include the following:

> "[Colvin] has interfered with business relationships to which he is not a party to [sic].
>
> "On or about January 9, 2024, Colvin fired a large caliber gun when [sic] prospective clients Jeremy [Bolin] and Dhyana [Bolin] and their grandchildren preventing them from using [the driveway] while they were touring the Stormins shop and property. It is unclear if Colvin was firing directly at the Bolins and/or the children."

Affidavits from Jeremy Bolin and Dhyana Bolin were attached to

Horton's complaint. Those affidavits indicate that the Bolins had gone to

the property to tour it because they were considering purchasing or

leasing the premises for their business. Even if we were to generously

construe the complaint to conclude that Horton alleged sufficiently that

he had a protectible business relationship with the Bolins, the complaint

fails to state a claim because Horton failed to allege that Colvin was

aware of the protectible business relationship between the Bolins and

Horton or that Colvin's actions were the reason that the Bolins did not

purchase or lease the property, if, in fact, they did not do so. Without

such allegations in the complaint, Colvin was not required to refute those

allegations, and therefore there is no issue of material fact regarding

29

Colvin's knowledge of the business relationship between the Bolins and Horton to resolve, rendering a judgment on the pleadings on this claim proper, as well.

Horton also alleges in his brief on appeal that, even if he did not properly assert a conversion claim arising from his allegations that Colvin had interfered with Horton's use of the driveway, he sufficiently stated a claim that Colvin interfered with the agreement between Horton and Skelton regarding the use of the driveway. The factual averments in the complaint regarding this claim include allegations that Colvin had "slandered [Horton] to Buddy Skelton resulting in [Colvin's tortious] interference whereby [Colvin] succeeded in securing permission, or in the alternative, acting on his own accord, to build a gate/fence to block access to [the] driveway," which Horton alleged had been utilized by him for his business for over 30 years pursuant to an oral agreement between him and Skelton to create and use the driveway. Horton also alleged that, at times, when Horton or others had used the driveway to access the premises, Colvin had locked the gate, purposely preventing the use of the driveway to leave the premises. In the portion of his complaint entitled "Interference with a business relationship," Horton incorporated

the earlier paragraphs of his complaint and alleged that "[Colvin] has constructed a barrier [across the driveway to Horton's former business premises] on property which does not belong to Colvin."

Horton does not effectively develop an argument on appeal that he has a claim against Colvin for interference with a contractual relationship. See Rule 28(a)(10); White Sands Grp., 998 So. 2d at 1058. As opposed to a claim of interference with a business relationship, a claim of interference with a contractual relationship is premised on an existing contract between the plaintiff and another individual. See White Sands Grp., 32 So. 3d at 14 (quoting Orrin K. Ames III, Tortious Interference with Business Relationships: The Changing Contours of this Commercial Tort, 35 Cumb. L. Rev. 317, 330 (2004-2005)) (" 'The two torts are initially distinguished by their primary elements -- one tort deals with the interference with a fixed-term contract that is already in existence; the other tort deals with "mere expectancies." The latter element determines which interests along the continuum of business dealings are protected.' "). However, as noted, Horton's complaint does not merely claim a right to use the driveway via an agreement; instead, his claim appears to be premised on what he considers to be Colvin's interference

31

with a property right in the driveway, which he characterizes in his complaint as an express easement or an easement by prescription. See Magna, Inc. v. Catranis, 512 So. 2d 912, 913 (Ala. 1987) ("An easement is property."). Horton has failed to present legal authority to support an argument that Colvin's actions, which he alleges resulted in interference with his and his customer's use of the easement, can be characterized as interference with a contractual relationship. Thus, based on the averments of the complaint and the lack of a developed legal argument on appeal, we cannot conclude that the trial court erred in determining that the complaint fails to state a claim of interference with a contractual relationship.

Finally, we address Horton's claim of "harassment with a display of deadly force," which is premised upon the factual allegations regarding the incident involving the Bolins, and his request for an injunction to prevent Colvin from "discharging weapons and a display of deadly force in the presence of children and parties who have an interest or potential interest in conducting business at [Horton's business premises]."[12] First,

---

[12]Harassment is a criminal act and would include conduct like that allegedly directed toward the Bolins. See Ala. Code 1975, § 13A-11-8(a)(2) (stating that "harassment shall include a threat, verbal or

we note that Alabama does not have a civil action for harassment; instead, conduct that might be considered harassment is typically addressed through other tort claims, including assault and the tort of outrage.[13]   See, e.g., Bennett v. Dunn, 507 So. 2d 451 (Ala. 1987) (involving a claim of assault and battery stemming from the discharge of a weapon in an attempt to scare off an intruder); Woodley v. City of Jemison, 770 So. 2d 1093, 1096 (Ala. Civ. App. 1999) (reversing a summary judgment in favor of a defendant accused of continuous telephone harassment on the ground that an issue of fact existed as to

---

nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety").

[13]The tort of outrage, or intentional infliction of emotional distress, was recognized in American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980).  The Inmon court stated that it

"recognize[d] that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress ... must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme."

394 So. 2d at 365.

33

whether the harassment was "so outrageous that it goes beyond the bounds of decency"); <u>Harrison v. Mitchell</u>, 391 So. 2d 1038 (Ala. Civ. App. 1980) (considering an appeal from an award of damages on an assault claim premised on the plaintiff's having been threatened by a person armed with a shotgun). In his brief on appeal, Horton appears to argue that his allegations regarding the incident involving the Bolins are intended to bolster his claim that Colvin "interfere[ed] with [Horton's] business relationships [in an attempt to] deter[] potential commercial engagement." Horton's brief, p. 55. Because Horton has not presented a cogent legal argument to support his contention that his claim of "harassment with a display of deadly force" is a claim upon which relief can be granted or that a question of fact relating to any such claim exists, we affirm the November 8, 2024, order of the trial court regardless of whether the trial court dismissed the claim pursuant to Rule12(b)(6) or entered a judgment on the pleadings pursuant to Rule 12(c).[14]

---

[14]We further note that, because Horton was not present when the alleged act took place, meaning that he could not have been placed in any fear of harm or have suffered any emotional upset, he would lack the ability to establish his entitlement to recovery for such causes of action as assault or the tort of outrage. <u>See</u> <u>Harris v. McDavid</u>, 553 So. 2d 567, 570 (Ala. 1989) (explaining that, in order to succeed on a tort-of-outrage claim, the plaintiff must establish that the defendant's actions caused the

Furthermore, Horton makes no argument in his brief relating to his request for an injunction, precluding our review of that issue. See Boshell v. Keith, 418 So. 2d 89, 92 (Ala. 1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.").

Having considered Horton's several arguments, we reverse the trial court's November 8, 2024, order insofar as it either dismissed Horton's libel claim relating to the "meth house" statement or entered a judgment on the pleadings on that claim. We therefore remand the cause for proceedings consistent with this opinion regarding Horton's libel claim. However, we affirm the trial court's November 8, 2024, order insofar as

---

plaintiff severe emotional distress); Harrison v. Mitchell, 391 So. 2d 1038, 1040 (Ala. Civ. App. 1980) (indicating that, once the plaintiff established that the defendant had "unlawfully threatened to touch [the plaintiff] in an angry manner under such circumstances as to lead [the plaintiff] to believe that [the defendant] not only possessed an immediate ability to carry out his threat but that he would soon do so," the jury was able to award compensatory damages); John R. Thompson & Co. v. Vildibill, 211 Ala. 199, 202, 100 So. 139, 141 (1924) (indicating, in case involving the wielding of a firearm, that, although "'[p]hysical pain, mental suffering, or mental anguish, or all three, may be inferred by the jury to exist" a plaintiff must first establish "proof of fright caused by a sudden, unprovoked, unjustifiable, assault with a pistol, accompanied with insulting language"). As a result, the allegations in Horton's complaint have not stated a claim for either tort; nor do the factual allegations of the complaint and answer reveal a dispute concerning any material fact regarding any such claim.

it either dismissed Horton's other claims or entered a judgment on the pleadings regarding those claims.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Hanson and Fridy, JJ., concur.

Bowden, J., concurs in part and dissents in part, with opinion.

BOWDEN, Judge, concurring in part and dissenting in part.

I respectfully dissent from this court's decision to reverse judgment of the Dale Circuit Court insofar as it dismissed Norman Horton's libel claim against David Colvin; I concur in all other respects. The main opinion holds that Horton sufficiently pleaded a claim of libel; however, Horton failed to meet his burden of presentation on appeal. Horton's appellate arguments concerning his libel claim are therefore waived, and this court cannot make those arguments for him.

This court applies a de novo standard of review to a judgment granting a motion to dismiss. See Williams v. Dodd, [Ms. SC-2024-0704, Sept. 26, 2025] ___ So. 3d ___, ___ (Ala. 2025)("'On appeal, a dismissal [under Rule 12(b)(6), Ala. R. Civ. P.,] is not entitled to a presumption of correctness.'" (quoting Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993))). However,

> "[t]he de novo standard of review does not relieve an appellant of her burden of demonstrating that the trial court erred. Under the precedent and the Rules of Appellate Procedure, an appellant -- even one seeking de novo review -- must make reasoned and particularized arguments in support of reversal. See, e.g., Archer ex rel. Archer v. Estate of Archer, 45 So. 3d 1259, 1266 (Ala. 2010)(applying a de novo standard of review, yet refusing to entertain an argument unsupported by specific citations to the record and to authority, explaining that '"'"'it is neither our duty nor function to perform all the legal

37

research for an appellant'"'"' (citations omitted)); <u>White Sands Grp., L.L.C. v. PRS II, LLC</u>, 998 So. 2d 1042, 1058 (Ala. 2008) .... After an appellant has fulfilled that threshold obligation, this Court will review the relevant aspects of the trial court's decision de novo .... But an appellant who has not performed that threshold function has failed at the outset to carry her burden of presentation and, accordingly, cannot prevail on appeal."

<u>Lay v. Destafino</u>, 385 So. 3d 15, 23-24 (Ala. 2023). Therefore, on appeal, Horton must meet his initial burden of presentation. Specifically, he must present arguments and relevant legal authority, with a discussion of the relevant facts, to demonstrate that he sufficiently pleaded all the elements required to prevail on his libel claim.

Horton argues that his complaint "sets out a textbook case of actionable defamation under Alabama law." Horton's brief, p. 38. And he alleges that his "allegations, supported by admissions, affidavits, and a documented pattern of conduct, are more than sufficient to state viable claims for defamation, libel, slander, and defamation per se under Alabama law." Horton's brief, p. 42. But Horton does not establish with citation to legal authority the elements of a libel claim in his brief, leaving this court to perform the legal research into the elements of that species of claim for him.

"To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)."

Nelson v. Lapeyrouse Grain Corp., 534 So. 2d 1085, 1091 (Ala. 1988) (citations omitted).[15] Furthermore, when a public figure asserts a defamation action, the public figure must demonstrate actual malice, if the alleged defamatory comments related to his conduct as a public official. See Smith v. Huntsville Times Co., 888 So. 2d 492, 496 (Ala. 2004)("The threshold question whether the actual-malice standard applies in a defamation action involves a two-pronged inquiry -- whether the defendant is a public official and, if so, whether the allegedly defamatory comments related to his conduct as a public official."). Actual malice has at least two subcategories, "common-law malice" and "constitutional malice." Wiggins v. Mallard, 905 So. 2d 776, 787 (Ala. 2004).

---

[15]Horton cites to Nelson v. Lapeyrouse, 534 So. 2d 1085 (Ala. 1988), but that citation is to support the definition of slander per se, not to establish the elements of defamation. Slander, like libel, is a branch of defamation. Case v. McConnell, 975 So. 2d 384 (Ala. Civ. App. 2007).

39

"'Constitutional malice' refers to the standard set forth in New York Times Co. v. Sullivan, [376 U.S. 254 (1964)], 'This standard is satisfied by proof that a false statement was made "'with knowledge that it was false or with reckless disregard of whether it was false or not.'"' Smith[ v. Huntsville Times Co.], 888 So. 2d [492,] 499 [(Ala. 2004)](quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 659, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989), quoting in turn New York Times v. Sullivan, 376 U.S. at 279-80)."

Little v. Consolidated Publ'g Co., 83 So. 3d 517, 522 (Ala. Civ. App. 2011).

A candidate for an elected office is a public official. See, e.g., Camp v. Yeager, 601 So. 2d 924, 928 (Ala. 1992)(applying "actual malice" standard to defamation action brought by candidate for secretary of state); Loveless v. Graddick, 295 Ala. 142, 147, 325 So. 2d 137, 141 (1975)(applying "actual malice" standard to defamation action brought by candidates for district attorney). Thus, to meet his burden of presentation, Horton must argue on appeal, with citations to relevant legal authority and the record, that he sufficiently pleaded facts necessary to establish constitutional malice.

Horton does not make that argument. Instead, he argues the opposite, asserting that actual malice is not an element that must be specifically alleged in the complaint. Horton's brief, p. 40 ("However, as a matter of pleading, malice is not an element that must be specifically

alleged in the complaint.")(emphasis omitted); Horton's brief, p. 41 ("Importantly, any dispute over actual malice or privilege is a matter for discovery and trial, not for the sufficiency of the pleadings."). But see Ex parte Blue Cross & Blue Shield of Alabama, 773 So. 2d 475, 478 (Ala. 2000)("[T]he plaintiff must plead defamation with actual malice ...."). Horton likewise makes no argument, with citation to relevant legal authority and the record, that he sufficiently pleaded that the alleged libelous comments were published, which is an element of defamation.

The circuit court found that Horton's complaint failed to state a libel claim. It is incumbent upon Horton to show on appeal that his complaint did, in fact, sufficiently plead a libel claim, and the arguments in his brief fell well short of this requirement. The main opinion argues that Horton did sufficiently plead defamation; however, whether he did or did not is not the relevant inquiry regarding whether Horton met his initial burden of presentation. To reverse the circuit court's judgment, Horton must demonstrate that point in his brief to this court, which he failed to fully accomplish. We are not permitted to make arguments on behalf of a party.

> "A party acting pro se must comply with legal procedure and court rules and may not avoid the effect of the rules due

41

to unfamiliarity. Hines v. City of Mobile, 480 So. 2d 1203 (Ala. 1985); Hubbard v. Montgomery, 372 So. 2d 315 (Ala. 1979). Rules governing the operation of the courts of this state are no more forgiving to a pro se litigant than to one represented by counsel. Bowman v. Pat's Auto Parts, 504 So. 2d 736 (Ala. Civ. App. 1987). In view of [the appellant's] failure to substantially comply with the rules, we pretermit a discussion of the issues he attempts to raise in this case. It is not the duty nor the function of an appellate court to perform one's legal research. Lokey v. State Department of Industrial Relations, 527 So. 2d 1327 (Ala. Civ. App. 1988)."

Lockett v. A.L. Sandlin Lumber Co., 588 So. 2d 889, 890 (Ala. Civ. App. 1991). Because Horton has not argued that he pleaded all the elements required to state a libel claim, with citations to his pleadings and relevant legal authority, his argument on that issue is waived.

Accordingly, I respectfully dissent insofar as the main opinion reverses the circuit court's judgment dismissing Horton's libel claim.